[No. 57323-9.    En Banc.    February 6, 1992.]

SAFECO INSURANCE COMPANY OF AMERICA, *Petitioner*, v.
HAP M. BUTLER, ET AL, *Respondents*.

*Timothy J. Whitters, Bradley A. Maxa,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for petitioner.

*Kenneth Fielding, James V. Handmacher,* and *Bonneville, Viert, Morton & McGoldrick,* for respondents.

*Margaret A. Morgan* on behalf of Washington Defense Trial Lawyers Association, amicus curiae for petitioner.

*Richard B. Kilpatrick, Bryan P. Harnetiaux,* and *David M. Grant* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondents.

UTTER, J. — An insurance coverage dispute arose between Hap and "Jane Doe" Butler and their insurer, Safeco Insurance Company of America (hereinafter Safeco). Safeco filed a declaratory judgment action to determine whether Hap Butler's actions were covered under a homeowners insurance policy. The trial court granted Safeco summary judgment on the coverage issue. The trial court also granted Safeco summary judgment on the Butlers' claim that language in a letter from Safeco to the Insurance Commissioner estops Safeco from denying coverage. The Butlers amended their answer to allege Safeco acted in bad faith in violation of *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 715 P.2d 1133 (1986). The trial court denied Safeco's summary judgment motion on that claim. We granted review of all three summary judgment motions.

We affirm all three trial court rulings as follows: (1) the question of whether Safeco acted in bad faith is a disputed

question of material fact that precludes granting Safeco's motion for summary judgment; (2) the injuries caused by Hap Butler were the result of his intentional act, and therefore his policy did not cover those injuries; and (3) language in a letter from Safeco to the Insurance Commissioner is not inconsistent with language in the policy, and therefore does not estop Safeco from denying coverage. The case is remanded for trial on the issue of whether Safeco acted in bad faith.

On July 3, 1986, 19-year-old Eddie Zenker and two companions used firecrackers to blow up several mailboxes in rural Pierce County. One of those boxes belonged to Hap Butler.

Butler heard the explosion, saw his ruined mailbox, and decided to attempt to find the people responsible. He took two loaded handguns and got into his car. He later stated his only reason for looking for the perpetrators was to get their license number and report them to the police. Butler eventually spotted the truck driven by Eddie Zenker. Believing the occupants of the truck to be the people who blew up his mailbox, Butler chased the truck at high speeds through the streets of Spanaway. The truck eventually stopped, and Butler got out of his car.

Butler claims he then saw a "flash" coming from the truck, and he believed someone in the truck was shooting at him. Butler reached into his car and picked up one of his guns. According to Butler, two people then got out of the truck. Believing he was about to be attacked, Butler fired six shots at the truck for the purpose of "break[ing] off any confrontation." He kept shooting after the people got back into the truck and started to drive away because he wanted to "make sure they left and didn't come back." One of the shots struck Eddie Zenker in the head, seriously injuring him. Butler claims he did not intend to shoot anyone, and that he intentionally fired at the truck rather than at the people getting out of the truck.

Paul Johnson, one of the truck's occupants, stated that no one got out of the truck after Butler stopped them. Accord-

ing to Johnson, as soon as Butler stepped out of his car, Zenker stepped on the accelerator to drive away. Butler started firing as soon as the truck began to move. Johnson said no one in the truck was armed or made any threatening movements toward Butler. An eyewitness, Arthur Kercher, also stated that no one got out of the truck, and that Butler started firing as soon as he stepped out of his car.

Butler hired Laurence Severance to defend him against the criminal charges that arose from the shooting.[1] Safeco placed attorney Ross Burgess on retainer in anticipation of the Zenkers' filing a civil suit. As the Zenkers had not yet filed suit, there was some confusion among the Safeco claims people whether the company retained Burgess to represent Safeco or Butler.

On July 28, 1986, Safeco directed Burgess to take no action regarding the potential civil suit without further notice. According to an internal memorandum, Safeco first wanted to determine whether there was coverage.

The Zenkers filed suit against Hap and "Jane Doe" Butler on July 31, 1986. The Butlers tendered the defense of the suit to Safeco on August 11, 1986. Safeco filed a declaratory judgment action on October 14, 1986. Two weeks later the company notified the Butlers that it would provide a defense under a reservation of Safeco's right to contest coverage.

Safeco asserted two grounds for denying coverage. First, Safeco claimed Zenker's injuries did not result from an "accident" within the meaning of the policy. Second, Safeco asserted the policy's exclusion of coverage for injuries that the insured intentionally caused applies to Butler's acts.

In January 1988, the Zenkers and the Butlers entered a stipulated agreement in their suit. The parties stipulated to damages of $3 million. The court entered a judgment in that amount against the Butlers. The Zenkers agreed to

---

[1]Butler entered an *Alford* plea to a charge of second degree assault. The court sentenced him to 18 months in jail.

limit their efforts to satisfy the judgment to any proceeds from the Safeco policy, or to any proceeds recoverable from a bad faith claim against Safeco. The Butlers assigned their rights to any bad faith claim to the Zenkers.

The trial court granted Safeco's motion for summary judgment on the issue of whether Eddie Zenker's injuries resulted from an act covered by the policy. The Butlers amended their answer to assert that Safeco was estopped from denying coverage. The trial court granted Safeco's motion for summary judgment on that issue. The Butlers again amended their answer to assert a counterclaim against Safeco for bad faith in handling the claim. The trial court denied Safeco's motion for summary judgment on the bad faith issue. A discussion of the elements of a cause of action for bad faith handling of an insurance claim is a necessary first step.

# I
## A

In *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986), this court declared an insurer has an "enhanced obligation" to its insured when defending under a reservation of rights. 105 Wn.2d at 387. The insurer can fulfill its enhanced obligation by meeting four criteria.

> First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation of rights defense itself, but of *all* developments relevant to his policy coverage and the progress of his lawsuit . . . .. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

105 Wn.2d at 388.

Because we found that the insurer in *Tank* did not breach its duty of good faith, we did not address the question of whether the insured must show that the insurer's bad faith

acts resulted in harm in order to state a cause of action for a violation of *Tank*. We now hold that a showing of harm is an essential element of an action for bad faith handling of an insurance claim.

■ ■ An action for bad faith handling of an insurance claim sounds in tort. *Murray v. Mossman*, 56 Wn.2d 909, 913, 355 P.2d 985 (1960); *Evans v. Continental Cas. Co.*, 40 Wn.2d 614, 630, 245 P.2d 470 (1952); *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 172, 473 P.2d 193 (1970). An essential element of any tort claim is that the alleged wrongful act caused harm. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962). Therefore, harm is an essential element of an action for bad faith handling of an insurance claim. *Cf. Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 627, 117 P.2d 644 (1941) (harm is an element of an action for an insurer's negligent handling of the defense of a claim).

The Butlers argue that harm is irrelevant to a *Tank* violation. They point to language in *Tank* stating that an insurer's duty to act in good faith arises out of its fiduciary relationship with the insured. *See* 105 Wn.2d at 385. The Butlers conclude an insurer's improper handling of a reservation of rights defense is tantamount to self-dealing, and should therefore be treated as a breach of fiduciary duty.

■ It is clear from the language of *Tank*, however, that the fiduciary relationship between an insurer and an insured is not a true fiduciary relationship. *Tank* holds that an insurer must give "*equal* consideration" to the insured's interests. (Italics ours.) 105 Wn.2d at 385-86. Under a "true" fiduciary relationship, however, the insurer would have to place the insured's interests above its own. *Cf. Esmieu v. Schrag*, 88 Wn.2d 490, 563 P.2d 203 (1977); *Tucker v. Brown*, 20 Wn.2d 740, 150 P.2d 604 (1944); *Wilkins v. Lasater*, 46 Wn. App. 766, 733 P.2d 221 (1987). Thus, the *Tank* holding indicates that something less than a true fiduciary relationship exists between the insurer and the insured.

In *Tank*, we relied heavily on *Tyler v. Grange Ins. Ass'n*, *supra*. The court in *Tyler* specifically rejected an argument that a true fiduciary relationship exists between an insurer and an insured. 3 Wn. App. at 176-77. That court noted that holding that a true fiduciary relationship exists would amount to applying strict liability to insurers for their negligent or bad faith acts. 3 Wn. App. at 176. We read that court's rejection of strict liability as recognition that a cause of action exists only where there is a showing of harm. *Tyler* supports our conclusion that harm is an element of a *Tank* violation.

## B

■ Butler argues that if harm is an element of the cause of action, the court should impose a rebuttable presumption of harm once the insured meets the burden of establishing bad faith. We agree.

As one commentator notes:

> The insured should not have the almost impossible burden of proving that he or she is demonstrably worse off because of [the insurer's actions].

A. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies and Insureds* § 2.09, at 40-41 (2d ed. 1988) (hereinafter *Insurance Claims*); *accord*, R. Keeton & A. Widiss, *Insurance Law* § 9.1(c), at 993 (1988) (hereinafter *Insurance Law*). Imposing a rebuttable presumption of prejudice relieves the insured of that "almost impossible burden". This reflects the fiduciary aspects of the insured/insurer relationship. *See* McMains, *Bad Faith Claims Handling — New Frontiers: A Multi-State Cause of Action in Search of a Home*, 53 J. Air L. & Com. 901, 917 (1988).

Our case law supports imposition of a rebuttable presumption. In *Transamerica Ins. Group v. Chubb & Son, Inc.*, 16 Wn. App. 247, 554 P.2d 1080 (1976), *review denied*, 88 Wn.2d 1015 (1977), the court held that an insured establishes prejudice as a matter of law where he or she shows that the insurer controlled the defense for 10 months before issuing a reservation of rights. The court noted:

> The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, [the insurer] irrevocably fixed the course of events concerning the law suit for the first 10 months. Of necessity, this establishes prejudice.

16 Wn. App. at 252.

A year prior to *Transamerica*, however, a different division of the Court of Appeals held "prejudice to the insured . . . is not presumed . . . [except] in extreme cases". *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 15 Wn. App. 608, 610, 550 P.2d 701 (1976). The court in *Transamerica* mentioned *R.A. Hanson*, but made no comment on its reasoning and did not attempt to distinguish the two cases. *See* 16 Wn. App. at 249-50. The court did not define what constitutes "extreme cases".

Any case in which the insurer actually acted in bad faith is an "extreme case" within the meaning of *R.A. Hanson*. Therefore, we presume prejudice in any case in which the insurer acted in bad faith. There is no conflict with *R.A. Hanson* because there the insurer did not act in bad faith.

Numerous jurisdictions presume prejudice where the insurer assumes the defense of the action and later attempts to withdraw. *See, e.g., Carter Lk. v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052 (8th Cir. 1979) (applying Iowa law); *National Union Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 384 F.2d 316 (D.C. Cir. 1967); *Pendleton v. Pan Am. Fire & Cas. Co.*, 317 F.2d 96 (10th Cir.), *cert. denied,* 375 U.S. 905 (1963); *Koehring Co. v. American Mut. Liab. Ins. Co.*, 564 F. Supp. 303 (E.D. Wis. 1983); *Cozzens v. Bazzani Bldg. Co.*, 456 F. Supp. 192 (E.D. Mich. 1978); *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987); *Vornado, Inc. v. Liberty Mut. Ins. Co.*, 106 N.J. Super. 111, 254 A.2d 325 (1969); *see also* Annot., *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Assured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R.2d 1148, 1160 (1954). Although these cases involve an insurer's

attempt to withdraw from representation, their reasoning applies equally to situations where the insurer undertakes a defense under a reservation of rights and then acts in bad faith.

The insurer's duty to defend the insured is one of the main benefits of the insurance contract. 1A R. Long, *Liability Insurance* § 5B.15, at 5B-143 (1986) (hereinafter Long). The insurer who accepts that duty under a reservation of rights, but then performs the duty in bad faith, is no less liable than the insurer who accepts but later rejects the duty. Each has equally breached its duty to the insured. The requirement of acting in good faith is meaningless if the insurer can protect itself from liability for bad faith simply by reserving its rights. Presuming prejudice once the insured establishes bad faith shifts the burden to the insurer to prove its acts did not prejudice the insured. The shifting of the burden ameliorates the difficulty insureds have in showing that a particular act resulted in prejudice. *Insurance Law*, at 993. It also recognizes the fact that loss of control of the case is in itself prejudicial to the insured. *Carter Lake*, 604 F.2d at 1061; *Insurance Law*, at 660. Finally, imposing a presumption of prejudice only after the insured shows bad faith adequately protects the competing societal interests involved. It provides a meaningful disincentive to insurers' bad faith conduct while protecting insurers from frivolous claims.

## C

■ In *Tank* we did not address what remedy is available for an insurer's bad faith handling of a claim under a reservation of rights. We now hold that where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage.

Safeco asserts, however, that estoppel cannot be used to expand the scope of insurance contracts. Under Safeco's theory, if Hap Butler's act is not covered, then nothing Safeco did could create coverage where it did not exist.

Safeco's argument is grounded in contract. Safeco asserts that a breach of contract entitles the injured party to receive only what the party would have received had the breach not occurred. *See Insurance Claims* § 4.35, at 213. Since the parties did not contract to provide coverage for a noncovered event, extending coverage cannot be a remedy for the breach. *Insurance Claims* § 4.35, at 213.

Safeco relies principally on *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989). In *Saunders*, we noted that, as a general rule, estoppel cannot create liability contrary to the express provisions of the contract the parties made. 113 Wn.2d at 335. However, there was no issue of insurer bad faith or of a *Tank* violation in *Saunders*. Therefore, it is not on point.

Several Washington cases recognize that estoppel is the appropriate remedy for an insurer's bad faith conduct. In *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 203 n.6, 743 P.2d 1244 (1987), the court noted that an insurer who in bad faith refuses to settle a claim within the policy limits may be held liable for the excess judgment. *Accord, Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 791, 523 P.2d 193 (1974). In *Transamerica Ins. Group v. Chubb & Son, Inc.*, 16 Wn. App. 247, 554 P.2d 1080 (1976), *review denied*, 88 Wn.2d 1015 (1977), the court held the insurer's bad faith acts estopped it from denying coverage. 16 Wn. App. at 251-52. *See also Insurance Claims* § 2.02, at 27-28 (an insurer who acts in bad faith should be estopped from denying coverage, even where an otherwise good policy defense exists).

In *Tank*, we recognized the insurer has an "enhanced obligation of fairness toward its insured." That enhanced obligation imposes a duty beyond that of the standard contractual duty of good faith. 105 Wn.2d at 383-85. Thus Safeco's contract theory of remedy is inappropriate for two reasons.

First, a *Tank* violation results in a cause of action which arises from the contract and the fiduciary relationship, and

which sounds in tort. Any remedy must take into account all of the aspects of the insurer/insured relationship. We cannot focus solely on the contract aspect of that relationship.

Second, the remedy must also take into account the purpose of creating a bad faith cause of action. If the only remedy available were the limits of the contract, then there would be no distinction between an action for an insurer's wrongful but good faith conduct, and an action for its bad faith conduct. An insurer could act in bad faith without risking any additional loss. *Cf. Bad Faith Refusal to Pay First-Party Insurance Claims: A Growing Recognition of Extra-Contract Damages*, 64 N.C.L. Rev. 1421, 1422 (1986). This would render *Tank* meaningless. An estoppel remedy, however, gives the insurer a strong disincentive to act in bad faith. *Cf.* Long § 5B.01, at 5B-6. Therefore, an estoppel remedy better protects the insured against the insurer's bad faith conduct.

To summarize our holding so far: we hold (1) harm is an essential element of an action for an insurer's bad faith handling of a claim under a reservation of rights; (2) if the insured shows by a preponderance of the evidence the insurer acted in bad faith, there is a presumption of harm; (3) the insurer can rebut the presumption by showing by a preponderance of the evidence its acts did not harm or prejudice the insured; and (4) if the insured prevails on the bad faith claim, the insurer is estopped from denying coverage.

## II

■ Applying the law to the facts of this case reveals the following. The trial court denied Safeco's motion for summary judgment on the bad faith claim. When reviewing a trial court's order on summary judgment, this court engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). We must consider the facts in the light most favorable to the nonmoving party, and summary judgment is appropriate

only if reasonable persons could reach but one conclusion. 114 Wn.2d at 274. Summary judgment may be granted only when there is no genuine issue as to any material fact. 114 Wn.2d at 274. All reasonable inferences must be made in favor of the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The Butlers assert the following acts are evidence of Safeco's bad faith: (1) Safeco decided to defend under a reservation of rights over 2 months prior to notifying the Butlers of its intent to do so; (2) Safeco delayed the Butlers' attorney's investigation; (3) Safeco used that delay to enhance its position on the coverage issue; (4) Safeco did not conduct a timely and thorough investigation; (5) due to Safeco's delay evidence was lost that would have been useful to the Butlers in the coverage suit; (6) Safeco attempted to use the Butlers' attorney to obtain statements for use in the coverage action; (7) at the regional level, Safeco commingled information from the tort defense and coverage action files; and (8) Safeco exhibited greater concern for its financial risk than for the Butlers' interests. Safeco counters that none of the above were done either in bad faith or to the prejudice of the Butlers. Safeco also disputes many of the facts underlying the Butlers' assertions.

■■ The moving party bears the burden of showing the absence of an issue of material fact. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Thus, Safeco has the burden of showing there is no material fact at issue with regard to whether it acted in bad faith or whether its alleged bad faith acts prejudiced the Butlers. Whether an insurer acted in bad faith is a question of fact. *Weber v. Biddle*, 4 Wn. App. 519, 522, 483 P.2d 155 (1971); Long § 5B.01, at 5B-2. Whether the insurer's acts prejudiced the insured is also a question of fact. *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 15 Wn. App. 608, 611, 550 P.2d 701 (1976). We do not prejudge the issue of bad faith or prejudice. Counsel for Safeco has advanced explanations for each alleged act of bad faith. Nonetheless, as noted by the trial court, there are material facts in dispute whether

Safeco acted in bad faith and whether those acts harmed the Butlers.

Safeco asserts, however, that the agreement between the Butlers and the Zenkers precludes a finding that Safeco's acts harmed the Butlers. In their stipulated agreement, the Zenkers agreed to limit their efforts to satisfy the $3 million judgment to any proceeds from the Safeco policy, including any proceeds recoverable from the Butlers' bad faith claim against Safeco. Safeco argues the stipulated agreement completely releases the Butlers from liability. According to Safeco, that release from liability assures that none of Safeco's alleged bad faith acts caused *actual* harm to the Butlers. Safeco concludes that the stipulated agreement satisfies Safeco's burden of showing its acts did not prejudice the Butlers.

Safeco cites *Meyer v. Dempcy*, 48 Wn. App. 798, 740 P.2d 383, *review denied*, 109 Wn.2d 1009 (1987) to support its position. In *Meyer*, two former patients filed medical malpractice claims against the estate of the plaintiff's deceased husband. The plaintiff then sued her attorney, alleging that his malpractice in handling the estate resulted in the two claims. However, the deceased husband's medical malpractice insurance company paid the full amount of the claims against the estate. The Court of Appeals affirmed the trial court's dismissal of the suit. In so doing, the court held that plaintiff did not suffer any actual loss from the attorney's alleged malpractice. 48 Wn. App. at 803-04. The court noted that the plaintiff's exposure to liability from the medical malpractice judgment was "theoretical, not actual." 48 Wn. App. at 803.

Safeco argues the Butlers' liability is equally theoretical. Because the Zenkers cannot execute the judgment against the Butlers, Safeco concludes the judgment cannot be the basis for alleging harm.

*Meyer* is inapposite. That case had nothing to do with the effect of a release on an insurer's liability. *Meyer* did not involve a dispute between an insurer and an insured. Instead, *Meyer* was concerned with whether the collateral

source rule precludes a plaintiff from pursuing a cause of action against an alleged tortfeasor where there was no showing of harm. 48 Wn. App. at 801-03. Its reasoning, therefore, is not controlling on this case.

■ Case law supports our conclusion that the Zenkers' agreement not to execute does not preclude a showing of harm. In *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 743 P.2d 1244 (1987), the insurer refused to defend the insured in an action arising out of a motorcycle accident. The injured party signed an agreement not to execute her judgment against the insured. The insurer argued it should not have to pay the judgment, since the agreement not to execute relieved the insured of any liability for the judgment. This court rejected that argument, noting:

> when an insurer has refused to defend its insured, it is in no position to argue that the steps the insured took to protect himself should inure to the insurer's benefit.

109 Wn.2d at 204.

The Court of Appeals reached a similar conclusion in *Kagele v. Aetna Life & Cas. Co.*, 40 Wn. App. 194, 698 P.2d 90, *review denied*, 103 Wn.2d 1042 (1985). In rejecting an argument that an agreement not to execute against the insured relieves the insurer from liability for the judgment, the court wrote:

> it is well established that a claim by an insured against his insurer may be assigned to the injured party.

40 Wn. App. at 197. The court concluded that a covenant not to execute, coupled with an assignment of rights and an agreed settlement, does not release the insurer from its obligations. 40 Wn. App. at 198. The court reasoned:

> If . . . the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.

40 Wn. App. at 198 (quoting *Miller v. Shugart*, 316 N.W.2d 729, 733-34 (Minn. 1982)).

In *Steinmetz v. Hall-Conway-Jackson, Inc.*, 49 Wn. App. 223, 741 P.2d 1054 (1987), *review denied*, 110 Wn.2d 1006 (1988), the insured brought a negligence claim against her insurance agent for failing to procure the specific amount of liability insurance requested. She then entered into an agreement with the injured party. Under the agreement, the insured assigned her rights to the negligence claim to the injured party in exchange for an agreement not to execute the judgment against the insured. The trial court granted summary judgment to the insurance agent on the grounds that the agreement not to execute relieved the insured of any obligation to pay the judgment. Therefore, according to the court, the insured could not show any harm.

The Court of Appeals reversed. The court reasoned that the assignee's rights are coextensive with those of the assignor as of the time the assignment is made. 49 Wn. App. at 227. At the time of assignment, the insured had a claim for negligence against the insurance agent, and could properly assign that claim to the injured party. 49 Wn. App. at 228. The court noted the proper focus is not on the effect of the assignment on the liability of the insured, but on the existence of the right to sue. 49 Wn. App. at 228. The court concluded:

> The fact that Steinmetz did not pay out of her own pocket and was not subjected to personal liability because of the covenant is immaterial. Steinmetz was forced to enter into a settlement agreement with Palmer because of [the insurance agent's] negligence.

49 Wn. App. at 228.

*Greer, Kagele,* and *Steinmetz* stand for the proposition that an agreement not to execute does not extinguish the insurer's liability for the judgment. Safeco attempts to distinguish *Greer* and *Kagele* as cases involving negligence and breach of the contractual duty to defend, rather than a bad faith claim sounding in tort.

Safeco's attempt to distinguish *Greer* and *Kagele* is on shaky ground. The distinction between negligence and bad

faith in this context is blurred. *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 792, 523 P.2d 193 (1974); *Tyler*, 3 Wn. App. at 175. Furthermore, bad faith is a tort arising out of the contractual duty to act in good faith. Long § 5B.02, at 5B-16; *Insurance Claims* § 2.02, at 27-28; *Tank*, 105 Wn.2d at 385 (duty to act in good faith arises out of the fiduciary relationship that exists, in part, because of the contract between the insurer and the insured). Thus, it seems meaningless in this context to distinguish between a breach of the contractual duty to defend and a breach of the duty to act in good faith. If a covenant not to execute does not relieve an insurer of liability for its breach of contract, then it should not relieve the insurer from liability for breaching its "enhanced obligation" to act in good faith.

Second, even though the agreement insulates the insured from liability, it still

> constitutes a real harm because of the potential effect on the insured's credit rating . . . [and] damage to reputation and loss of business opportunities[.]

*Barr v. General Accident Group Ins. Co. of North Am.*, 360 Pa. Super. 334, 342, 520 A.2d 485, 489, *appeal denied*, 517 Pa. 602, 536 A.2d 1327 (1987). *Cf. Barker v. Sumney*, 185 F. Supp. 298 (N.D. Ind. 1960); *Ivy v. Pacific Auto. Ins. Co.*, 156 Cal. App. 2d 652, 320 P.2d 140 (1958); *Insurance Claims* § 6.05, at 300; *Rager v. Superior Coach Sales & Serv.*, 110 Ariz. 188, 516 P.2d 324 (1973). As the Pennsylvania court noted, this type of agreement is not a release from liability. Instead, it is an agreement to seek recovery only from a specific asset — the proceeds of the insurance policy and the rights owed by the insurer to the insured. *Barr*, at 341.

The Butlers had a potential bad faith claim against Safeco. They assigned that claim to the Zenkers. The Butlers had the power to assign their rights under the policy without Safeco's consent. *Insurance Law* § 4.1(3)(i), at 303; *Kagele*, 40 Wn. App. at 198. The Zenkers acquired all of the Butlers' rights as they existed at the time of assignment. *Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 579 P.2d 1341 (1978). That assignment

does not relieve Safeco from liability, nor does it preclude a showing of harm.

Viewing all of the evidence in the light most favorable to the Butlers, we hold there are material facts at issue as to whether Safeco acted in bad faith. Therefore, we affirm the trial court's denial of summary judgment. We now turn to the question of whether the trial court erred in determining that the insurance policy did not cover the injuries to Eddie Zenker.

## III

The Safeco policy provides coverage for "bodily injury . . . caused by an occurrence to which this policy applies". Clerk's Papers, at 25. The policy defines an occurrence as "an accident . . . which results, during the policy period, in bodily injury". Clerk's Papers, at 15.

It is undisputed that Butler intentionally fired his gun at Zenker's truck. Safeco argues that, as a matter of law, injuries caused by intentionally firing a gun can never be caused by an accident. In granting Safeco's motion for summary judgment, the trial court determined that Eddie Zenker's injuries

> were not caused by an "accident" as required in the Safeco policy. Therefore, Safeco has no obligation to provide liability insurance coverage to either . . . Hap M. Butler or . . . Geraldine Butler . . ..

Order Granting Partial Summary Judgment; Clerk's Papers, at 397.

The Butlers respond that Hap Butler did not intend to shoot or injure Eddie Zenker, and did not foresee that his shots would cause injury. Butler asserts he fired at the truck in self-defense, and for the purpose of breaking off any confrontation. According to Butler, the shot that injured Zenker was an unintentional ricochet. Butler presented the declarations of two experts that support the ricochet theory. Since the Butlers are the nonmoving party, all facts and inferences must be viewed in the light most favorable to them. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d

1030 (1982). For the purpose of reviewing the trial court's order, therefore, we assume the bullet that struck Eddie Zenker was an unintentional ricochet. The question then becomes whether, as a matter of law, there is no coverage under the policy for the unintentional injury to Eddie Zenker.

The word "accident" is not defined in the policy. Therefore, we look to the common law definition. *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 104, 751 P.2d 282 (1988). In *Detweiler* we held:

> an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

110 Wn.2d at 104 (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 20 Wn. App. 261, 263-64, 579 P.2d 1015 (1978)).

The Butlers argue that the ricochet was an additional, unexpected, independent and unforeseen happening. Safeco responds that the ricochet was foreseeable. We agree with Safeco. Under the facts of this case no reasonable person could reach the conclusion that Zenker's injury was unforeseeable.

Both the Air Force and the Oakland Police Department trained Butler in the use of firearms. Butler belonged to a pistol range and practiced shooting approximately once a month. On the day of this incident, he intentionally fired his gun at an occupied, metal truck. Under the facts of this case, no reasonable person could conclude Butler was unaware of the possibility of ricochet, or that a ricochet might hit an occupant of the truck. Therefore, Zenker's injury is not the result of an "accident", and Safeco has no obligation to provide coverage to the Butlers for that injury. If, however, the Butlers prevail on the bad faith claim, Safeco is estopped from asserting this coverage defense.

Because we hold that the injury is not the result of an accident, we do not address Safeco's argument that the policy's exclusion clause[2] also precludes coverage. We also do not address Safeco's argument that we should infer an intent to injure Eddie Zenker from the facts of this case. Such an inference is unnecessary to our conclusion that the injury did not result from an accident.

The Butlers argue that, even if there is no coverage for Hap Butler, Safeco must still provide coverage to Geraldine Butler. They rely on *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 669, 689 P.2d 68 (1984), for the proposition that the excluded act of one insured does not prevent the other insured from recovering under the policy.

In *Strong*, the insured's wife intentionally drove her car into two other cars. The policy at issue required the insurer to pay only for losses that were "accidental". We determined the term "accidental" was ambiguous, because the policy did not specify from whose standpoint the presence or lack of intent was to be assessed. 102 Wn.2d at 674. We concluded that whether a loss is accidental is determined from the point of view of the insured. 102 Wn.2d at 674. We also held that the policy in *Strong* created separate contracts for coverage between the insurer and each insured. 102 Wn.2d at 669. Therefore, the excluded act of one insured did not preclude coverage for the other insured. 102 Wn.2d at 673.

The Butlers argue the facts in this case are analogous to those in *Strong*. They conclude Eddie Zenker's injuries were an accident from the point of view of Geraldine Butler. They further conclude the policy created separate contracts between Safeco and each of the Butlers. Under our reasoning in *Strong*, therefore, the Butlers conclude Safeco's policy covers Geraldine Butler.

*Strong* is not dispositive. Much of the language the Butlers rely on is in that section of *Strong* interpreting the policy's exclusionary clause. As noted above, however, we

---

[2]The policy excludes coverage for any bodily injury "which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by the insured." Clerk's Papers, at 11.

are deciding this issue based on the definition of "accident", and not on the exclusionary clause. The policy clearly only covers injuries resulting from an "accident". Because we conclude Eddie Zenker's injuries did not result from an accident, there is no coverage under the policy. Thus, *Strong* is inapposite.

The Butlers also rely on the holding in *Strong* that whether an event is an accident is determined from the point of view of the insured. That holding was overruled *sub silentio* in *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990). In *Roller*, we unanimously held

"accident" is not a subjective term. Thus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not.

115 Wn.2d at 685. In a footnote, we went on to specifically reject the view that "whether an intentional act is an 'accident' should be viewed from the perspective of the insured." 115 Wn.2d at 685 n.4. Thus, the holding of *Roller* is that whether an event is an accident does not depend on the view of the insured. Applying that reasoning to this case, we hold Safeco's policy does not cover Geraldine Butler.

We next address whether the trial court erred in holding on summary judgment that language in a letter from Safeco to the Insurance Commissioner did not estop Safeco from denying coverage. We affirm the trial court.

### IV

Safeco's policy with the Butlers excludes coverage for any bodily injury "which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by the insured." The policy exclusion originally applied only to bodily injury "expected or intended" by the insured. In 1985, Safeco amended the policy to add the "foreseeable result" language. Pursuant to RCW 48.18.100, Safeco notified the Insurance Commissioner of the proposed change. In its letter to the Insurance Commissioner, Safeco wrote:

> This change, which is being adopted nationwide, is in response to recent claims and court cases where liability is based on the insured's negligence in foreseeing the result of an intentional act. *This exclusion states clearly original policy intent: that bodily injury and property damage which is intended by the insured, whether through direct acts or as a result of those acts, is excluded.*

(Italics ours.) Clerk's Papers, at 389. The Butlers focus on the italicized portion of the above quote. They interpret that language as precluding coverage only where the insured *intended the injury.* The Butlers then argue the language in the letter conflicts with Safeco's current interpretation that the exclusion applies where the insured *intended the act* that caused the injury. They conclude the language in the letter estops Safeco from now arguing that a different interpretation applies.

The Butlers rely on *Fittro v. Lincoln Nat'l Life Ins. Co.*, 111 Wn.2d 46, 757 P.2d 1374 (1988) to support their estoppel argument. They maintain *Fittro* creates a rule of estoppel where the insurer makes public representations that are inconsistent with its later policy interpretation.

In *Fittro* there was a conflict between the wording of the statutorily required certificate describing a group insurance policy and the language in the master policy. We first noted that the certificate is the only document given to the insured. 111 Wn.2d at 52. The insurer never gave a copy of the master policy to Fittro. Because the purpose of the certificate is to inform the insured of the terms and conditions of the policy, we interpreted the language of the certificate as controlling. 111 Wn.2d at 51.

The Butlers, however, are in the opposite situation of Ms. Fittro. The document Safeco gave the Butlers accurately informed them that the policy did not cover injuries caused by intentional acts. Unlike Ms. Fittro, the Butlers were informed of the terms and conditions of the policy.

The Butlers essentially argue that *Fittro* mandates that Safeco's letter be interpreted as being a part of the insurance policy. In *Fittro*, we held that since the certificate in

question was required by law, that certificate became a part of the policy. 111 Wn.2d at 51. The Butlers argue that Safeco's letter was also mandated by law.

The purpose of the two documents is, however, entirely different. The certificate in *Fittro* is intended to provide the insured with notice of the terms and conditions of the policy. 111 Wn.2d at 51. Thus the *Fittro* decision is supported by a public policy goal of preventing insurance companies from deceiving the public as to the terms and conditions of the policy. There is no similar public policy concern in the Butlers' case. The purpose of the Safeco letter is to allow the Commissioner to determine whether the proposed language change comports with state laws and regulations. *See* RCW 48.18.100, .110. There is nothing in that letter which could deceive the public as to the terms and conditions of the policy. Therefore, *Fittro* is not on point. The letter to the Insurance Commissioner is not a part of the Butlers' policy.

█ We do not need to decide whether there is an actual conflict between the language of the letter and Safeco's current interpretation of the policy. Assuming arguendo that there is a conflict, the Butlers have not shown the elements of estoppel necessary to prevail on this issue.

The elements of equitable estoppel are:

> (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Kessinger v. Anderson*, 31 Wn.2d 157, 170, 196 P.2d 289 (1948); *accord, Emrich v. Connell*, 105 Wn.2d 551, 716 P.2d 863 (1986). Thus, for estoppel to apply, the insured must have justifiably relied to his or her detriment upon the words or conduct of the insurer. *Burr v. Lane*, 10 Wn. App. 661, 672, 517 P.2d 988 (1974).

There is no indication that the Butlers had any knowledge of the Safeco letter. Therefore, they could not have justifiably relied on any statements in that letter. "The insured cannot justifiably rely on the insurer's words . . . of

which he is unaware." *Burr*, 10 Wn. App. at 672. We, therefore, reject the Butlers' estoppel argument.

## CONCLUSION

We hold there is a material fact in dispute as to whether Safeco acted in bad faith. We also hold that Eddie Zenker's injuries were not caused by an "accident" within the meaning of the Safeco policy. Therefore, Safeco is not obligated to provide coverage to either Hap or Geraldine Butler. If, however, the Butlers prevail on their bad faith claim, then Safeco is estopped from asserting this coverage defense. Finally, we hold that because the Butlers did not know about Safeco's letter to the Insurance Commissioner until after this action commenced, there was no justifiable reliance on their part. Therefore, nothing in that letter estops Safeco from denying coverage. All three of the trial court's rulings are affirmed.

DORE, C.J., and BRACHTENBACH, GUY, and JOHNSON, JJ., concur.

DOLLIVER, J. (dissenting) — I find the majority's opinion problematic for several reasons. First, the majority presumes harm — an essential element of a bad faith claim — and then fails to explain the nature of that harm. In the absence of a settlement like the one Butler and Zenker reached, the supposed harm to an insured stems from the fact of liability and the danger of an excess judgment at trial. *See, e.g.*, *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 15 Wn. App. 608, 611, 550 P.2d 701 (1976). Where, as here, the injured party has settled with the insured and agreed not to execute against him, I see neither harm nor any justification for presuming it.

Is the harm economic loss, such as attorney fees and costs incurred by Butler in settling with Zenker? If so, do we need to *presume* those losses when they are so easy to prove and document? Or is the harm at issue an insured's emotional distress associated with the anxiety of an unset-

tled claim? If so, is that the kind of harm that, as a matter of policy, we should ever presume? Or is the harm, as the majority suggests, the whole penumbra of loss, including an unfavorable credit rating and damage to reputation, which emanates from the fact of liability? If so, then it is unreasonable to presume that harm because Safeco can never rebut it.

Here, Butler admitted liability when he settled with Zenker; Safeco had no control over that admission or the time at which Butler made it. Yet there will never be a trial on the issue of Butler's liability to Zenker. Safeco will not have an opportunity to negate the harm that *presumably* flowed from the fact of liability because it can never show its defense of Butler would have resulted in a finding of no liability or in a more favorable settlement than the one Butler reached with Zenker.

That is the second, and most troublesome, aspect of the majority's decision — it ignores the effect of the Butler/Zenker settlement agreement by measuring Butler's "harm" at the time he settled with and assigned his rights to Zenker. At that time, the majority says, Butler was facing a risk of liability which the settlement agreement does not negate. Majority, at 398; *see also Steinmetz v. Hall-Conway-Jackson, Inc.*, 49 Wn. App. 223, 226-28, 741 P.2d 1054 (1987), *review denied*, 110 Wn.2d 1006 (1988). However, unless it can rely on the settlement agreement and covenant not to execute, Safeco has no proof to rebut the presumption of harm to Butler. The effect is an *irrebuttable* presumption in Butler's favor. Therefore, where there is alleged bad faith by an insurer, followed by a settlement and assignment of the bad faith claim between an insured and an injured party, the issue of harm will *always* be decided in favor of the insured.

The majority fails to recognize this is a policy decision in favor of insured parties and makes no attempt to explore the ramifications or desirability of that policy. In fact, it will probably result in more trials on the issue of bad faith, because insurers will not be able to point to the existence of

a favorable settlement agreement as a nullification of harm. Furthermore, the majority opinion does not provide insurance companies with any extra incentive to handle claims differently, or better. Allowing Safeco to rely on the Butler/Zenker settlement to show there was no harm to Butler will not motivate Safeco (or any insurance company) to mishandle claims or act in bad faith in the future. An insurer would still face a bad faith claim if its mishandling of a claim resulted in a failure to settle or in an unfavorable settlement. Where, as in this case, there is an allegation of bad faith but a favorable settlement, *e.g.*, a covenant not to execute against an insured, then there is no harm to be prevented.

Even if Butler could prove Safeco's conduct prejudiced him in some way, or exposed him to a risk of liability, the settlement agreement effectively nullified that prejudice and obviated that risk. As a result of the settlement, Butler was completely released from civil liability for the Zenker shooting; Zenker agreed not to enforce any judgment against Butler and to seek relief *only* from Safeco. I fail to see, in light of such a covenant not to execute, how Butler has been harmed. Because I see no genuine issue of material fact with regard to whether Safeco's alleged bad faith acts harmed Butler, I would find the Butler/Zenker settlement agreement, as a matter of law, can be used to show the absence of harm to Butler. A bad faith claim to be pursued against Safeco at this point is, I think, punitive in nature and should not be allowed. *See Barr v. Interbay Citizens Bank*, 96 Wn.2d 692, 699-700, 635 P.2d 441, 649 P.2d 827 (1981).

DURHAM and SMITH, JJ., concur with DOLLIVER, J.

Reconsideration denied May 8, 1992.