[No. 59705-1-I.   Division One.   May 4, 2009.]

LEDCOR INDUSTRIES (USA), INC., *Appellant*, v. MUTUAL OF ENUMCLAW INSURANCE COMPANY ET AL., *Respondents*.

2

4

*Richard L. Martens*, *Scott A. Samuelson*, and *Barbara L. Bollero* (of *Martens & Associates, PS*), for appellant.

*James M. Beecher*, *David R. Collins*, and *Patrick E. Trompeter* (of *Law Offices of Hackett Beecher & Hart*), for respondents.

*David M. Jacobi* on behalf of National Fire & Marine Insurance Company, amicus curiae.

¶1 ELLINGTON, J. — Ledcor Industries (USA), Inc., sued Mutual of Enumclaw Insurance Company (MOE) alleging that because MOE failed to promptly accept Ledcor's tender of defense as an additional insured on its subcontractor's policy and failed to investigate or indemnify Ledcor, MOE was liable for bad faith, breach of contract, and violations of the Consumer Protection Act (CPA), chapter 19.86 RCW. The court found bad faith and violations of the CPA but awarded damages only for breach of contract. We affirm.

## BACKGROUND

¶2 Ledcor was the general contractor for a 25-building condominium development in Bellevue. Ledcor subcontracted with Zanetti Custom Exteriors to install siding on phase I of the project.

¶3 Though Ledcor maintained its own insurance policies, it intended to use its subcontractors' policies as its primary insurance, and required all subcontractors to maintain commercial general liability (CGL) coverage and to include Ledcor as an additional insured on their policies. MOE was Zanetti's CGL carrier.

¶4 Serious problems arose with the condominium project. The homeowners' association sued the developer, who sued Ledcor by way of a third-party claim in March 2002. Ledcor tendered its defense to its own carriers, who retained counsel and began work.

¶5 Through the attorney appointed by Ledcor's insurers, Ledcor tendered its defense to Zanetti and other subcontractors in August 2002. Zanetti forwarded the tender to MOE in September 2002. MOE responded to Ledcor's attorney on the same day, requesting details about Zanetti's work on the project.

¶6 Ledcor's attorney sent MOE a copy of the Ledcor/Zanetti contract and documents establishing MOE's coverage as an additional insured under Zanetti's policy, offered to make additional copies of certain materials he had already provided, and suggested MOE ask its insured Zanetti for the rest of the information, saying that if Zanetti could not provide the requested materials, "I have 34 banker's boxes of material that I will allow you to review at any mutually agreeable time and date. I will not, however, perform your investigation for you."[1]

¶7 In March 2003, Ledcor filed a fourth-party complaint against Zanetti and other subcontractors. MOE accepted Zanetti's tender and defended it against Ledcor.

---

[1] Ex. 15.

¶8 In October 2003, MOE accepted Ledcor's tender subject to a reservation of rights. MOE stated it would appoint a lawyer or share the cost of a lawyer appointed by one of Ledcor's other insurance companies. Ledcor did not respond. MOE did not appoint a lawyer or request billings until the instant litigation began.

¶9 A preliminary agreement to settle the underlying litigation with the homeowners association for $1.25 million was reached in February 2004 and finalized in March. Ledcor paid $105,000 toward the settlement, which was otherwise funded by its own insurers. The settlement was found reasonable in November 2005. MOE had notice but did not attend the mediations or participate in the reasonableness hearing.

¶10 Ledcor settled its fourth-party lawsuit against Zanetti for $236,000, which MOE paid. Ledcor then brought this action against MOE in February 2006. After a three day bench trial, the court issued an initial judgment in February 2007.

¶11 The court found MOE had acted in bad faith and breached its contractual duty to defend Ledcor, and awarded Ledcor $101,873.02 (plus prejudgment interest) for MOE's unpaid defense obligation. The court further concluded MOE's bad faith and its violation of an insurance regulation constituted a violation of the CPA. Initially, the court awarded $10,000.00 in treble damages. After reviewing Ledcor's fee petition, however, the court withdrew the award, explaining that its CPA award was "plain error" because Ledcor had proved no harm resulting from the CPA violations.[2] Because Ledcor was not injured, the court ruled Ledcor was also not entitled to CPA attorney fees.

¶12 The court also ruled that MOE had satisfied its duty to indemnify Ledcor by funding the $236,000 settlement between Ledcor and Zanetti. Applying that offset, the court awarded nothing on Ledcor's indemnification claim. The

---

[2] Clerk's Papers at 1071.

court also denied Ledcor's motion for fees under *Olympic Steamship Co. v. Centennial Insurance Co.*[3]

¶13 The court entered a second amended final judgment in April 2007, certifying the judgment as final under Civil Rule (CR) 54(b). Ledcor appeals and MOE cross-appeals.

## DISCUSSION

### *Bad Faith*

¶14 MOE challenges the court's conclusion that it breached its duty of good faith and fair dealing by "failing to aggressively defend Ledcor or protect Ledcor's interests."[4] The usual standard of review for the court's findings of fact and conclusions of law applies.[5]

¶15 The court's conclusion is based upon its findings that MOE failed to promptly respond to Ledcor's tender of defense and "did not appoint counsel and did not contribute any defense or indemnity funds towards the substantial fees and costs incurred by Ledcor in defending and resolving the claims . . . arising out of Zanetti's work."[6] The court also found that once it accepted tender, MOE failed to assign a separate claims adjuster, open a separate file, or set up separate reserves for Ledcor's claims. Additionally, MOE did not request copies of defense cost billings and

---

[3] 117 Wn.2d 37, 811 P.2d 673 (1991).

[4] Clerk's Papers at 997 (Conclusion of Law 7).

[5] The standard of review for a trial court's findings of fact and conclusions of law is a two-step process. First, this court determines if the findings of fact were supported by substantial evidence in the record. If so, it determines whether those findings of fact support the conclusions of law. *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999).

[6] Clerk's Papers at 989 (Finding of Fact 47). Ledcor argues that this and other "findings" are unchallenged by MOE and must therefore be considered verities on appeal. MOE responds, and we agree, that many of the findings are misidentified conclusions of law to which error need not be ascribed and that its argument and supporting citations are sufficient in any event to permit review. *See* Reply Br. of Resp't/Cross Appellant at 2-8; *see also State v. Olson*, 126 Wn.2d 315, 320-21, 893 P.2d 629 (1995).

failed to explain what efforts it made to ensure it honored its obligation to defend Ledcor.

¶16 Under *Tank v. State Farm Fire & Casualty Co.*,[7] an insurer defending under a reservation of rights has an enhanced obligation. In addition to the basic duties of good faith, fair dealing, and equal consideration for the insured's interests, the insurer must satisfy four criteria: (1) thoroughly investigate the claim, (2) retain competent defense counsel loyal only to the insured, (3) fully inform the insured of the reservation-of-rights defense and the progress of the lawsuit, and (4) refrain from putting the insurer's financial interests above that of the insured.[8]

¶17 MOE does not dispute that it failed to thoroughly investigate the claims against Ledcor or retain defense counsel. Rather, MOE contends all elements of its enhanced obligation of good faith were met "either by Mutual of Enumclaw directly or in conjunction with Ledcor's own insurers."[9] MOE provides no authority for this proposition, which we reject. The fact that Ledcor's other insurers were actively defending Ledcor's interests does not relieve MOE of its duties, under *Tank* and its own contract, to investigate and defend.[10]

¶18 The only action MOE took on Ledcor's tender was to send an acceptance of tender and reservation of rights letter 14 months later. This falls well short of MOE's duties under *Tank*. The court properly found MOE acted in bad faith.

### Remedy for Bad Faith

¶19 The court declined to award damages for bad faith because Ledcor failed to prove harm. Ledcor contends that

---

[7] 105 Wn.2d 381, 387, 715 P.2d 1133 (1986).

[8] *Id.* at 388.

[9] Br. of Resp't/Cross Appellant at 17.

[10] *Cf. McRory v. N. Ins. Co. of N.Y.*, 138 Wn.2d 550, 559, 980 P.2d 736 (1999).

bad faith creates a presumption of harm,[11] MOE is estopped from denying coverage,[12] and MOE must indemnify Ledcor for all its liabilities on the entire condominium project, regardless of cause. Ledcor identifies as its damages the entire $1.25 million settlement and all defense costs incurred in the litigation with the homeowners.

¶20 Ledcor is correct there is a presumption of harm, usually difficult for the insurer to rebut.[13] But Ledcor's application of the estoppel theory is not supported by the contract or the case law.

¶21 The remedy for insurer bad faith is compensation for the harm caused thereby and estoppel as to policy defenses to the claim:

> When the insurer breaches the duty to defend in bad faith, the insurer should be held liable not only in contract for the cost of the defense, but also should be estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage. The coverage by estoppel remedy creates a strong incentive for the insurer to act in good faith, and protects the insured against the insurer's bad faith conduct.[14]

¶22 The insurer acting in bad faith forfeits defenses *to the claim tendered and handled in bad faith,* including the defense that the claim was never covered at all. MOE therefore forfeited any defenses available to it under Zanetti's policy. The claim arising out of Zanetti's work was one of many in the underlying litigation. However, Ledcor's theory is that MOE's bad faith handling of the tender under Zanetti's policy means that MOE must cover Ledcor for all

---

[11] *See Tank,* 105 Wn.2d at 387.

[12] MOE contends estoppel cannot apply because Ledcor's refusal to cooperate in MOE's investigation left it with unclean hands. Our resolution of Ledcor's claims makes it unnecessary to reach this argument.

[13] *See Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.,* 161 Wn.2d 903, 924-25, 169 P.3d 1 (2007).

[14] *Kirk v. Mount Airy Ins. Co.,* 134 Wn.2d 558, 564, 951 P.2d 1124 (1998); *see also Dan Paulson,* 161 Wn.2d at 924-25; *Besel v. Viking Ins. Co. of Wis.,* 146 Wn.2d 730, 735, 49 P.3d 887 (2002); *Safeco Ins. Co. of Am. v. Butler,* 118 Wn.2d 383, 392, 823 P.2d 499 (1992).

homeowners' claims involving all the subcontractors, not just those related to Zanetti's work. Essentially, Ledcor argues that MOE is estopped to assert that these claims were not covered under Zanetti's policy. But estoppel does not operate to create coverage. Ledcor was not entitled to indemnification under Zanetti's policy from liability caused by wrongdoers other than Zanetti.

¶23 The trial court found Ledcor ultimately received what the policy entitled it to and therefore suffered no harm due to MOE's failure to timely accept tender and defend.[15] The evidence supports this finding. Ledcor was at all times, before and after its tender to MOE, represented by competent counsel who aggressively defended Ledcor's interests and with whom Ledcor never expressed dissatisfaction. Ledcor's claim that it wanted MOE to take over the defense is belied by the record,[16] and there is no evidence that MOE's involvement might have achieved a different end result. MOE stood ready to pay its share of defense costs, and MOE funded the eventual settlement with Zanetti. MOE's bad faith failure to timely accept tender and promptly become engaged in Ledcor's defense thus made no difference in the outcome. As Ledcor ultimately suffered no harm resulting from MOE's breach of its duties, the court did not err in awarding no damages for bad faith.[17]

---

[15] For a different result under very different facts, also involving bad faith by MOE, see *Dan Paulson*, 161 Wn.2d at 921 (acknowledging "almost impossible burden" on insurer to prove absence of harm from bad faith).

[16] Exhibit 17 indicates Ledcor intended to solicit contributions from other insurers, including MOE, only after resolving the underlying litigation.

[17] *See Butler*, 118 Wn.2d at 389 ("a showing of harm is an essential element of an action for bad faith handling of an insurance claim").

## Consumer Protection Act

¶24 The parties dispute whether Ledcor successfully proved its CPA claim, entitling it to damages and/or attorney fees.[18] We review that question de novo.[19]

¶25 To successfully bring an action under the CPA, a private plaintiff must prove five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation."[20]

¶26 Violation of an insurance regulation is an unfair trade practice, which may result in CPA liability if the remaining elements of the five-part test are established.[21] Here, the court properly found that MOE's failure to accept tender for 14 months violated insurance regulations requiring it to "acknowledge and act reasonably promptly upon communications with respect to claims."[22] Further, bad faith constitutes a per se violation of the CPA.[23]

¶27 We agree with the trial court that MOE's conduct violated the CPA. However, Ledcor must establish

---

[18] A party that successfully brings an action under the CPA is entitled to attorney fees, whether or not it has suffered actual damages. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 163-64, 795 P.2d 1143 (1990); *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 855, 792 P.2d 142 (1990). If a party establishes actual damages under the CPA, the court has discretion to award treble damages up to $10,000. RCW 19.86.090; *Mason*, 114 Wn.2d at 855.

[19] *Keyes v. Bollinger*, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982) (finding that defendant in CPA case engaged in certain conduct is reviewable for substantial evidence, but question whether particular actions gave rise to violation of CPA is reviewable as a question of law).

[20] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[21] *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990).

[22] WAC 284-30-330(2).

[23] 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 27.7, at 209 (3d ed. 2006) (citing *Gingrich v. Unigard Sec. Ins. Co.*, 57 Wn. App. 424, 788 P.2d 1096 (1990)).

that those violations caused an "injur[y] in [its] business or property," without which there is no remedy under the CPA.[24] Ledcor argues it was injured because it had to use $105,000 of its own funds toward settlement of the underlying litigation. But Ledcor fails to show how the $105,000 payment is in any way attributable to MOE's bad faith or delayed acceptance of tender.[25] Ledcor also argues it was injured because its ongoing involvement in "the case" required it to pay expert witness fees and other expenses. But these claimed expenses were incurred in the instant lawsuit against MOE, not the underlying litigation. Those expenses are not cognizable injuries under the CPA.[26]

¶28 Next, Ledcor argues it was injured because it had to retain and pay coverage counsel to resolve a dispute with Ledcor's own insurers. Again, Ledcor fails to explain why MOE's failure to defend claims arising from Zanetti's work has anything to do with Ledcor's dispute with its own insurers. Ledcor also argues it suffered injury because MOE's failure to defend had a negative impact on its insurance loss record, which caused "loss of peace of mind [and] uncertainty."[27] But Ledcor did not present evidence to establish that its insurance loss record was negatively impacted or that the corporation encountered difficulty in procuring insurance, higher premiums, or loss of peace of mind.

■■■ ■■■ ¶29 Further, emotional damages are not compensable under the CPA.[28] Ledcor relies on *Dan Paul-*

---

[24] RCW 19.86.090; *Hangman Ridge*, 105 Wn.2d at 780.

[25] Michael Parker testified Ledcor would not have had to pay the $105,000 if MOE had "stepped up to the plate and defended and indemnified Ledcor" but does not explain why that is so. Report of Proceedings (Dec. 5, 2006) at 88.

[26] *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 564, 825 P.2d 714 (1992); *see also Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 180-81, 159 P.3d 10 (2007) (distinguishing *Sign-O-Lite* where litigation expenses were not incurred in the context of the CPA litigation).

[27] Br. of Appellant/Cross Resp't at 42.

[28] *Stephens*, 138 Wn. App. at 180.

*son*[29] for the proposition that loss of peace of mind, uncertainty, and risk constitute injury under the CPA. In that case, which did not involve the CPA, our Supreme Court noted that the insurer's bad faith in subpoenaing an arbitrator "created uncertainty concerning potential prejudicing of the arbitrator and the effect of MOE's interference on the confirmability of the arbitration award."[30] This observation in part led the court to reject MOE's contention that the insured's decision to proceed with the arbitration rebutted the presumption of harm due to its bad faith. The court noted " 'that loss of control of the case is in itself prejudicial to the insured.' "[31] Loss of control of the case is not the same as loss of peace of mind, and here, Ledcor never lost control of its case. *Dan Paulson* does not support Ledcor.

¶30 The court's determinations that Ledcor suffered no injury cognizable under the CPA and no actual damages were correct.[32] Consequently, Ledcor is entitled to neither damages nor attorney fees on this basis.[33]

---

[29] *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 922, 169 P.3d 1 (2007).

[30] *Id.* at 922-23.

[31] *Id.* at 923 (quoting *Butler*, 118 Wn.2d at 392).

[32] Ledcor must show injury to support an award of attorney fees, but must show actual damages to recover treble damages. *Mason*, 114 Wn.2d at 855. Ledcor has shown neither.

[33] Ledcor contends the court lacked authority and jurisdiction to sua sponte withdraw its CPA damages award. We disagree.

Under CR 54(b), a decision that adjudicates fewer than all of the claims in an action is not final unless the court makes written findings that there is no just reason for delay of the entry of judgment. In the absence of such findings, a judgment resolving fewer than all claims as to fewer than all parties "is subject to revision at any time." CR 54(b).

The initial judgment in this case did not resolve all of the claims against all of the parties, and the court had made no CR 54(b) certification. Accordingly, the court had authority to modify its initial judgment. For the same reason, the court did not need permission from this court. Ledcor's notice of appeal was treated by this court as a notice of discretionary review under RAP 5.1. Since review had not been accepted, the trial court retained authority to act in the matter.

## Calculation of Ledcor's Award

¶31 The court awarded Ledcor the defense costs for claims arising out of Zanetti's work, which the court determined to be $101,873.02. MOE challenges the award as arbitrary.

¶32 The court arrived at its award using a two-step process. It first determined what percentage of the damage was attributable to Zanetti's work by comparing the Zanetti settlement with Ledcor ($236,000.00) to Ledcor's settlement with the developer ($1,250,000.00). The court determined that 18.8 percent of Ledcor's settlement with the developer was attributable to Zanetti's work. It then applied that percentage to the total defense costs Ledcor submitted at the reasonableness hearing in the underlying case, $541,877.77. The court awarded the resulting figure, $101,873.02, to Ledcor.

¶33 As the trial court observed, determination of damages was made difficult by the record. This was in part due to MOE's failure to participate in Ledcor's defense, which meant that defense costs attributable to Zanetti-related claims were not segregated from defense costs attributable to other subcontractors or from costs associated with Ledcor's subsequent fourth-party claims against the subcontractors. Under the circumstances, the court was well within its discretion to apply a proportionate share approach[34] to the award of defense costs.[35]

---

[34] *See Mason,* 114 Wn.2d at 850 ("The amount of damages is a matter to be fixed within the judgment of the fact finder. A trier of fact has discretion to award damages which are within the range of relevant evidence. An appellate court will not disturb an award of damages made by the fact finder unless it is outside the range of substantial evidence in the record, or shocks the conscience, or appears to have been arrived at as the result of passion or prejudice." (footnotes omitted)).

[35] This is not the same as an award based upon a subcontractor's pro rata share of a settlement. That practice was disapproved in *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Development, Inc.,* 143 Wn. App. 345, 364, 177 P.3d 755 (2008).

### Olympic Steamship *Attorney Fees*

█ ¶34 Under *Olympic Steamship*,[36] an insured is entitled to recover attorney fees if the insured is compelled to litigate an issue of coverage. Whether a party is entitled to attorney fees is an issue of law reviewed de novo.[37]

█ ¶35 MOE accepted coverage well before Ledcor initiated this lawsuit.[38] MOE also admitted coverage in its answer to Ledcor's complaint. *Olympic Steamship* does not apply when coverage is not at issue.[39] Since MOE did not force Ledcor to litigate coverage, *Olympic Steamship* fees are unavailable.

### *Fees on Appeal*

█ ¶36 A party may recover attorney fees on appeal when permitted by applicable law.[40] Because it is not entitled to fees under *Olympic Steamship* or the CPA, Ledcor may not recover them on appeal.

¶37 Affirmed.

SCHINDLER, C.J., and AGID, J., concur.

Review denied at 167 Wn.2d 1007 (2009).

---

[36] 117 Wn.2d 37.

[37] *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126-27, 857 P.2d 1053 (1993).

[38] *See* Ex. 17 (dated October 3, 2003; Ledcor's complaint was filed March 2, 2005).

[39] *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 147, 930 P.2d 288 (1997).

[40] RAP 18.1.