972 F.2d 1336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert H. BAUGH; William P. Dorsey; Nick Westlund; Jean
M. Patterson, Baugh Construction Company, a
Washington Corporation, Plaintiffs-Appellants,
v.
CONTINENTAL CASUALTY COMPANY, an insurance corporation,
Transcontinental Insurance Company, an insurance
corporation; CNA Insurance Co., an
affiliation of insurance
companies,
Defendants-
Appellees.
 No. 90-16457.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 15, 1992.
Decided July 15, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 ORDER
 The petition for rehearing is granted. The Memorandum Disposition filed February 27, 1992 is hereby withdrawn.
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Baugh Construction Company and several individuals affiliated with it appeal the district court's grant of summary judgment in favor of CNA Insurance Companies ("CNA") and two of its subsidiaries. The district court found that CNA had no duty to defend Baugh in suits against Baugh by various parties with whom it had previously been involved in real estate transactions. The court also granted summary judgment in favor of CNA on Baugh's claims of breach of the covenant of good faith and fair dealing and breach of fiduciary duty.
 
 
 3
 We affirm in part, reverse in part and remand.
 
 BACKGROUND
 I.
 
 4
 Appellant Baugh Construction Company ("BCC") is a Washington Corporation which does business in Washington, Oregon and California. The individual appellants, with the exception of Jean Patterson, are past and present officers and directors of BCC. Jean Patterson is the representative of the Estate of Harlan Patterson, a former president of BCC. This memorandum disposition will refer to the appellants, collectively, as "Baugh."
 
 
 5
 Between 1982 and 1984, Baugh entered into a series of real estate limited partnerships, including Palmquist Associates VIII, IX, XI, XII and XV (the "Palmquist Partnerships"). Each Palmquist Partnership entered into a joint partnership with one of the partnerships known as Northcon VIII, IX, XI, XII and XV (the "Northcon Partnerships," which had been formed by David Bryant. The joint partnerships were known as Sacore Partnerships I-V (the "Sacore Partnerships") and Highland I. The joint partnerships were to purchase and develop real estate at various California sites, including Folsom and Pacifica. It was understood BCC was to serve as general contractor for the developments, although there was no legal obligation to use its services.
 
 
 6
 The partnerships purchased land at various sites, and several projects were undertaken. One building was completed and rented, and another building was partially completed. However, as market conditions worsened, the partnerships began to experience problems. The principals disagreed as to how the partnerships should be run. On December 17, 1984, the Northcon Partnerships and David Bryant filed suit in Superior Court in Sacramento against BCC, the Palmquist Partnerships and the individuals who are now appellants. The complaint included claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, conversion and conspiracy. The complaint alleged that the Palmquist Partnerships, which were responsible for constructing improvements on the land, had managed construction in such a way as to result in unusually high profits to BCC. It also alleged that the Palmquist Partnerships and BCC converted assets of the Sacore partnerships. The complaint also alleged that the defendants did not properly account for and report their activities and attempted to force the modification of the partnership agreements by threatening to send inaccurate notices to joint partnership creditors.
 
 
 7
 A first amended complaint, filed on June 4, 1985, added negligence claims but did not add significant additional factual allegations. A second amended complaint, filed on September 20, 1985, added new defendants. A third amended complaint, filed on December 18, 1985, added claims for injuries to Bryant's person including humiliation and emotional distress, and also added claims of loss of use of property. A fourth amended complaint ("Northcon Complaint IV") was filed on May 8, 1987. It was a completely reorganized and substantially expanded version of the prior complaint, and contained 250 pages. Dan Izumi filed a cross-complaint against the same defendants on January 17, 1986, and Robert Steele also filed a cross-complaint against them on November 19, 1986.
 
 II.
 
 8
 From April 1, 1986 until April 1, 1990, Baugh Enterprises, the parent company of BCC, was insured under four successive comprehensive general liability ("CGL") policies issued by two subsidiaries of CNA. Each policy had a term of one year.
 
 
 9
 On March 16, 1989, Baugh tendered defense of the Northcon suits to CNA by letter to CNA's office in Seattle, Washington. On July 19, 1989, after repeated efforts by Baugh to obtain a response, CNA informed Baugh that the claim was being handled by the Portland office, and that further communication was forthcoming. However, Baugh received no word denying or accepting its tender. On November 13, 1989, it filed suit against CNA for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. Under threat of sanctions, CNA finally denied Baugh's tender on May 3, 1990.
 
 
 10
 On April 18, 1990, Baugh moved for partial summary judgment on the issue of CNA's duty to defend. On July 16, 1990, the district court denied Baugh's motion and, on its own motion, entered summary judgment in favor of CNA on all claims, including Baugh's claims of breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. The district court denied Baugh's post-judgment motions. Baugh now appeals.
 
 STANDARD OF REVIEW
 
 11
 A grant of summary judgment is reviewed de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). "A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 12
 The district court found that, under California choice of law doctrine, the insurance policies at issue should be interpreted using Washington law. Neither party has challenged this finding.
 
 
 13
 A federal court applies state law as it believes the highest court of the state would apply it. Insurance Co. of N. Am. v. Howard, 679 F.2d 147, 149 (9th Cir.1982). The court of appeals reviews de novo the district court's interpretation of state law. Baugh Constr. Co. v. Mission Ins. Co., 836 F.2d 1164, 1168 (9th Cir.1988). Under Washington law, interpretation of an insurance contract is treated as a question of law, and is thus reviewed de novo. Id. (citing Pacific Indem. Co. v. Bloedel Timberlands Dev., Inc. 624 P.2d 734, 736 (Wash.App.1981)).
 
 
 14
 "An insurer denying a duty to defend has the burden to establish as a matter of law on a summary judgment motion that the injury complained of falls outside the indemnity coverage of the policy or that claims against the insured are unambiguously exempted from coverage." Viking Ins. Co. v. Hill, 787 P.2d 1385, 1388 (Wash.App.1990).
 
 DISCUSSION
 
 15
 I. The District Court's Grant of Summary Judgment on CNA's Duty to Defend
 
 A. Duty to Defend
 
 16
 The district court granted summary judgment in favor of CNA, finding it had no duty to defend. The court observed that the Bryant and Izumi claims were first filed before the inception of the policy period; there could thus be no duty to defend. As to the cross-complaint of Steele and Northcon Complaint IV, the court noted that the policies limited coverage to damage arising from an "occurrence" during the covered periods and "neither expected nor intended from the standpoint of the insured." The court then found that "the extensive factual allegations alleged in the various versions of the complaint predating the inception of any CNA policy are the essential facts which underlie the Northcon litigation...." Although pleadings filed after the inception had added new theories of recovery and additional factual assertions, by the time they were filed, "the possible damages accruing to the insureds were no longer unexpected."
 
 
 17
 "An insurance policy is a contract whereby the insurer undertakes to indemnify the insured against loss, damage, or liability arising from a contingent or unknown event. Accordingly, many courts have concluded that if an event causing loss is no longer contingent or unknown prior to inception of an insurance policy, there is no coverage under that policy." Time Oil Co. v. Cigna Property & Casualty Ins. Co., 743 F.Supp. 1400, 1412 (W.D.Wash.1990) (applying Washington law) (citations omitted); Bartholomew v. Appalachian Ins. Co., 655 F.2d 27, 29 (1st Cir.1981) ("The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty."); Wash.Rev.Code Ann. § 48.01.040 (West 1984) ("Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies."); Cal.Ins.Code § 22 (West 1972) ("Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.").
 
 
 18
 Under this principle, the decision of the district court was essentially correct. Both Bryant and Izumi originally filed suit before the inception of the first policy period; their claims were based on acts which took place and damage which became manifest before the policy took effect. When Baugh obtained insurance from CNA, therefore, the claims against Baugh were no longer contingent--potential liability had passed from a risk to a certainty. Baugh argues that the amended complaints, and deposition testimony, have revealed more extensive damage, and additional types of bodily injury, allegedly occurring within the policy period. However, such allegations merely extend the scope of possible liability--possible liability which was already no longer contingent when Baugh obtained coverage from CNA.
 
 
 19
 Steele filed suit after the inception of coverage. However, his complaint is modeled on the earlier complaints and is also based on events which took place before the inception of coverage. Therefore, CNA also had no duty to defend Baugh against his suit.
 
 B. Waiver
 
 20
 Baugh argues that CNA "is barred from denying its duty to defend" because it did not investigate or timely respond to Baugh's tender. Baugh suggests CNA has waived its right to refuse the tender.
 
 
 21
 To find waiver, a court must find that the insurer "voluntarily and intentionally relinquished a known right or that [its] conduct 'warrants an inference of the relinquishment of such right.' " Saunders v. Lloyd's of London, 779 P.2d 249, 254 (Wash.1989) (citation omitted). On these facts, a finding of waiver is inappropriate. CNA's delay in responding to Baugh's tender is disturbing. Nonetheless, we refuse to infer that CNA relinquished its rights merely on the basis of this silence. See USLife Savings and Loan Ass'n v. National Sur. Corp., 171 Cal.Rptr. 393, 400 (Cal.Ct.App.1981) ("The requirement that an insurer pay only for those losses it has agreed to cover would not be deemed waived solely on evidence of a 16-month delay in denying a claim.")
 
 
 22
 II. Baugh's Claims for Breach of Fiduciary Duty and Breach of the Covenant of Good Faith and Fair Dealing
 
 
 23
 The district court granted summary judgment in favor of CNA on Baugh's claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing. The district court reasoned that where the insurance policy provides no coverage for a claim, the insurer cannot be liable for bad faith in handling the claim. This is not so; summary judgment on this rationale was incorrect. We reverse the district court's grant of summary judgment on Baugh's bad faith claim, but affirm, on other grounds, the grant of summary judgment on its claim for breach of fiduciary duty. See Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989) (court of appeals may affirm on any ground finding support in the record), cert. denied, 110 S.Ct. 3217 (1990).
 
 A. Breach of Fiduciary Duty
 
 24
 Washington courts have rejected the notion that the insurer has a fiduciary duty towards the insured. It is true that Washington courts have sometimes used the notions of a duty to act in good faith and a fiduciary duty almost interchangeably. See, e.g. Industrial Indem. Co. of the Northwest v. Kallevig, 792 P.2d 520, 526 (Wash.1990) (describing the "fiduciary duty to act in good faith); Phil Schroeder, Inc. v. Royal Globe Ins. Co., 659 P.2d 509, 513 (Wash.1983) (insurer's obligation to act in good faith rests on the notion that the insurer owes a fiduciary duty to the insured). However, the Washington Supreme Court recently clarified this issue, holding that "something less than a true fiduciary relationship exists between the insurer and the insured." Safeco Ins. Co. of Am. v. Butler, 823 P.2d 499, 503 (Wash.1992). The court noted that it had, in an earlier case, "specifically rejected an argument that a true fiduciary relationship exists between an insurer and an insured." Id. (citing Tyler v. Grange Ins. Ass'n, 473 P.2d 193 (Wash.1970)).
 
 
 25
 Thus, because under Washington law the relationship between insurer and insured is not a fiduciary relationship, we affirm the district court's grant of summary judgment in favor of CNA on this claim.
 
 
 26
 B. Breach of the Covenant of Good Faith and Fair Dealing
 
 
 27
 In Washington, the insurer's obligation to act in good faith is both a judicially created doctrine and a statutory requirement. Washington courts have consistently imposed on the insurer a duty of good faith. Tank v. State Farm Fire and Casualty Co., 715 P.2d 1133, 1136 (Wash.1986). The legislature has also imposed such a duty:
 
 
 28
 The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured and their representatives rests the duty of preserving inviolate the integrity of insurance.
 
 
 29
 Wash.Rev.Code Ann. § 48.01.030 (West 1984).
 
 
 30
 This Washington statute imposes a very broad requirement of good faith on all parties in the insurance relationship. The source of the duty to act in good faith is the relationship between the insurer and the insured; thus, "an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests." Tank, 715 P.2d at 1136. Neither caselaw nor statute suggest that the insurer has such a duty only when the insurance policy provides coverage; rather, its obligation is an ongoing one. Thus, the insured may maintain a claim for bad faith even if the insurer's misdeeds occur in the processing of an uncovered claim. Indeed, in a recent case the Washington Supreme Court found the policy provided no coverage for the suit against the insured; however, the court did not see this as an obstacle to the insured's proceeding to trial on its claim that the insurer acted in bad faith in its defense of the suit. Safeco, 823 P.2d at 510.
 
 
 31
 Thus, the district court erred in granting summary judgment, sua sponte, in favor of CNA on Baugh's claim for breach of the covenant of good faith and fair dealing. We therefore remand this case to the district court for further proceedings on Baugh's remaining claim.
 
 
 32
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3