In this appeal from a declaratory judgment action, the sole issue is whether an insurer, after undertaking to defend a potential insured, without reserving its rights to, nevertheless, deny coverage and without keeping that insured apprised of the status of his case, can thereafter successfully deny coverage two years after beginning a defense in the case.
The relevant facts are as follows:
Shelby Steel Fabricators purchased from United States Fidelity and Guaranty Insurance Company ("U.S.F. G.") a comprehensive general liability policy that contained exclusions to the effect that U.S.F. G. would not provide coverage for products liability injuries or damages arising *Page 310 
after the completion and delivery of the product.
In 1983, Shelby Steel, as a subcontractor for Bailey Construction Company, contracted to fabricate a steel support structure for a slurry makedown feed bin for Moretti-Harrah Marble Company. After delivery of the support structure, Shelby Steel was not involved in its installation and had no other responsibilities with regard to the contract.
In 1984, the bin and the steel support structure collapsed, causing substantial damage. Thereafter, Moretti-Harrah sued the general contractor, the engineering firm, and Shelby Steel. That case was still pending in the circuit court as of the filing of the appeal in this case. When that suit was filed, Shelby Steel notified U.S.F. G., which hired a law firm in Birmingham to defend Shelby Steel. From March 1985 until July 1987, U.S.F. G. had exclusive control over Shelby Steel's defense. Although U.S.F. G. was kept abreast of the status of the lawsuit, Shelby Steel was never consulted in any way regarding its defense. From the record, it appears that a "form" non-waiver agreement was given to Shelby Steel sometime in March 1985. This form, however, was never signed by Shelby Steel, nor was it returned to U.S.F. G. It also appears from the record that the form was never explained to, or discussed with, Shelby Steel; and U.S.F. G., according to the deposition of its senior claims adjuster, dispenses these forms as a matter of course whenever a suit of this nature is filed against one of its insureds. In addition, the record also reveals that Shelby Steel's attorney received a copy of a letter from U.S.F. G. to the law firm hired by U.S.F. G. to defend Shelby Steel stating that U.S.F. G. would be handling the case pursuant to a non-waiver agreement. That letter was dated March 5, 1985. At first, the claim against Shelby Steel was treated by the attorneys hired to defend Shelby Steel as a covered claim with no liability. However, in May 1987, Shelby Steel's potential liability was revised to be $600,000 to $750,000. U.S.F. G., 29 months after undertaking Shelby Steel's defense and two months after receiving a revision as to potential liability, sent Shelby Steel a reservation of rights letter that denied coverage based on the policy exclusions. The facts upon which the decision to deny coverage was made were found in the complaint filed against Shelby Steel. Therefore, the case before us is not one where subsequent discovery revealed a potential problem with coverage.
Initially, we will address the appellant's contention that it did not receive timely notice of the reservation of rights. The appellant first argues that the form non-waiver agreement that was found in its files was never executed by either it or U.S.F. G. and that it was never notified that it was nevertheless binding. In other words, Shelby Steel argues that the non-waiver agreement, because of the manner in which it was given to Shelby Steel, did not constitute notice. Shelby Steel, instead, concentrates on the notice sent in 1987 and asserts that for two years it had no control over its defense. Thus, Shelby Steel argues, any notice given in 1987 was "too late." Shelby Steel cites Campbell Piping Contractors, Inc. v. HessPipeline Co., 342 So.2d 766 (Ala. 1977), and Burnham Shoes,Inc. v. West American Insurance Co., 504 So.2d 238 (Ala. 1987), in support of this position. In Campbell Piping Contractors, we stated that the general rule is that an insurer is obligated to indemnify an insured if it undertakes to defend him without first reserving the right to deny coverage:
 "When a liability insurer, by assuming the defense of an action leads one to believe liability to do so is not denied, it would be unfair to subsequently permit that insurer to deny coverage, when, without reservation and with knowledge, it assumes exclusive control of the defense of an action. See 38 A.L.R.2d 1148, § 5[b], citing Security Ins. Co. v. Jay, 109 F. Supp. 87
(D.C.Minn. 1952); Lincoln Park Arms Bldg. Corp. v. U.S.F. G. Co., 287 Ill. App. 520, 5 N.E.2d 773
(1936); General Tire Co. v. Standard Acci. Ins. Co., 65 F.2d 237 (CA 8th Minn. 1933). The general rule is limited by the principle that the insurer *Page 311 
may avoid the operation of the rule by giving notice that the assumption of the defense is not a waiver of its right to deny coverage.
 "The general rule is stated in the following manner at 38 A.L.R.2d 1151, § 3:
 " '[A] liability insurer which assumes and conducts the defense of an action brought against the insured with knowledge of facts taking the accident or injury outside the coverage of the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the defense of noncoverage. . . .' "
 Cases from thirty jurisdictions are said to follow this general rule.
 "A like number of jurisdictions also hold that the insurer need only give timely notice that its undertaking to defend does not constitute a waiver of any coverage question it might have. We can see no reason for a distinction to be made in this case."
Campbell Piping Contractors, supra, at 770-71. In BurnhamShoes, Inc., supra, this Court reiterated the rule set forth inCampbell Piping Contractors. See Burnham Shoes, Inc., supra, at 241-42.
U.S.F. G., on the other hand, contends that the non-waiver form that was given to Shelby Steel constituted sufficient notice that U.S.F. G. was reserving its right to deny coverage, especially when coupled with the copy of a letter from U.S.F. G. to the attorneys hired to defend Shelby Steel that was sent to Shelby Steel's attorney on March 5, 1985, which is set out in pertinent part below:
 "Since this was our first notice of the claim and the matter will require extensive investigation, it will be necessary for us to handle the matter under a non-waiver agreement pending the completion of the investigation."
The form non-waiver agreement given to Shelby Steel, but apparently never explained, discussed, or signed, reads as follows:
 "Whereas, Shelby Steel Fabricators, Inc. of Vincent, Al 35178, hereinafter called the Insured, holds a policy of insurance, number SMP030734627, issued by USF G Ins. Co., hereinafter called the Company, and whereas an accident or occurrence happened on or about Feb. 9, 1984, at Sylacauga, Al in connection with which the insured is claiming benefits under said policy, now therefor:
 "It is hereby agreed by and between the Insured and the Company that any action taken by the Company, by and through its representatives, and at such time and in such manner as it deems advisable, in investigating said accident, shall not operate in any way as a waiver, or invalidate any of the conditions, of said policy nor any of the rights of either party hereto under said policy; and in the event any suit has been or shall be filed against the Insured growing out of a said accident or occurrence should the Company elect to defend said suit, such defense by it shall not be construed as a waiver of any of the conditions of said policy.
 "Nothing herein shall be construed as a waiver of any rights which the Insured has under said policy.
 "It is the intention of this agreement to preserve all the rights of the parties hereto and provide for an investigation of the said accident or occurrence without in any way affecting, impairing or adding to the liability of the company under said policy or under any statutes or the common law, and no act of the Company hereunder shall be construed as an admission of its liability or coverage."
Having considered the evidence before us, we are of the opinion that Shelby Steel was notified through its own attorney's receipt of a copy of a letter sent to the attorneys hired by U.S.F. G. to defend Shelby Steel by U.S.F. G. that U.S.F. G. intended to investigate the case pursuant to a non-waiver agreement. It is not disputed that Shelby Steel's attorney did indeed receive a copy of this correspondence. While Shelby Steel makes much of the fact that it never signed and returned *Page 312 
the non-waiver agreement that was given to it by the U.S.F. 
G. claims officer, nonetheless the form was given to Shelby Steel. While we consider the notice given to have been meager, at best (the non-waiver agreement alone in this case would have been insufficient considering the manner in which it was given), we are of the opinion that the copy of the correspondence that was sent to Shelby Steel's attorney constituted at least constructive notice to Shelby Steel as to the reservation of rights.
Having considered the issue of notice, however, we must now consider whether anything else was required of U.S.F. G. in order for it to be able to deny coverage. In determining whether there was another requirement, we must look to the case of L S Roofing Supply Co. v. St. Paul Fire Marine Ins. Co.,521 So.2d 1298 (Ala. 1987), wherein Justice Beatty answered a question certified to this Court from the United States District Court for the Northern District of Alabama regarding the responsibility of the insurer for payment of an independent attorney for the insured. In that case it was the contention of the insured that defending a case pursuant to a reservation of rights created a conflict of interest, thereby requiring an insurer to pay for an independent attorney of the insured's choosing. In that case, there was no question that the insured had received notice of the reservation of rights; he merely argued that the insurance company, conducting a defense pursuant to such reservation, automatically had a conflict of interest and, therefore, should be obligated to pay for his independent attorney. We held that when an insurance company undertakes a defense pursuant to a reservation of rights, it does so under an "enhanced obligation of good faith" and that as long as the criteria set forth below are met the insurer will not be required to pay for its insured's independent attorney:
 " 'This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.' "
L S Roofing Supply Co., supra, at 1303, quoting Tank v. StateFarm Fire Casualty Co., 105 Wn.2d 381, 715 P.2d 1133 (1986) (emphasis added in L S Roofing Supply Co.). While the case at bar is factually distinguishable from L S Roofing Supply Co.,[1]
we are of the opinion that the insurer, nevertheless, must meet its "enhanced obligation of good faith" in order to deny coverage pursuant to a reservation of rights. This obligation includes, as stated above, keeping the insured apprised of the status of his case. Because Shelby Steel was not kept informed as to the status of its case between the initial notice of the reservation of rights (which we again note was minimal) and U.S.F. G.'s denial of coverage 29 months later, we conclude that U.S.F. G. has failed to meet its enhanced obligation to Shelby Steel and, therefore, that it must indemnify Shelby Steel for any liability in the underlying action. *Page 313 
We point out that the obligation now placed on insurance companies is not an onerous one. It merely requires that if an insurer intends to defend a case pursuant to a non-waiver agreement or reservation of rights, then that insurer not only must provide notice to its insured of that fact, but also must keep its insured informed of the status of the case. Such action not only protects the insured, but also ensures that the insurance company has fulfilled its responsibilities toward that insured should a problem regarding coverage later arise.
For the foregoing reasons, the judgment is hereby reversed and the cause is remanded with instructions that the trial court enter judgment in favor of Shelby Steel.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and JONES, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., not sitting.
[1] In L S Roofing Supply Co., the question was not one regarding notice of a reservation of rights. In that case, there was no question that the insured had received notice of the reservation of rights — we merely stated the requirements for an insurer to escape the obligation to pay for independent counsel for the insured. We did not address how the failure to meet the criteria set out in Tank would affect the duty of the insurance company to indemnify the insured should the insured be found liable for a noncovered accident.