814 So.2d 191 (2001)
The AETNA CASUALTY & SURETY COMPANY et al.
v.
MITCHELL BROTHERS, INC., d/b/a MBI, and Abraham Mitchell.
1980950.
Supreme Court of Alabama.
May 18, 2001.
Dissenting Opinion on Overruling of Rehearing September 7, 2001.
Fred D. Gray of Gray, Langford, Sapp, McGowan, Gray & Nathanson, Tuskegee; *192 Carol Ann Smith and Susan C. Haygood of Smith & Ely, L.L.P., Birmingham; and Charles J. Fleming of Gardner, Middle-brooks & Fleming, P.C., Mobile, for appellants.
Joseph D. Steadman of Sims, Graddick & Dodson, Mobile; W. Lloyd Copeland, Mobile; and Mack B. Binion of Briskman & Binion, P.C., Mobile, for appellees.
William J. Baxley and Joel E. Dillard of Baxley, Dillard, Dauphin & McKnight, Birmingham, for amicus curiae Insurance Association of America.
Mark D. Hess of London & Yancey, L.L.C., Birmingham; and Rhonda Pitts Chambers of Rives & Peterson, Birmingham, for amicus curiae Alabama Defense Lawyers Association.
WOODALL, Justice.
Aetna Casualty and Surety Company[1] appeals from a bench trial in a declaratory judgment action involving an insurance coverage dispute between Aetna and its insureds, Abraham Mitchell and Mitchell Brothers, Inc. ("MBI"). The dispute concerns coverage under Aetna commercial general liability policies for two racial discrimination lawsuits: 1) a class action filed against MBI (the Lowman suit[2]); and 2) a wrongful termination suit filed against Abraham Mitchell and MBI (the Craft suit[3]).
MBI is engaged in the management of shopping centers and apartments in Mobile. In April, 1995, Janelle Lowman and sixteen other African-Americans delivered a draft complaint to MBI, giving notice of their claims that MBI denied housing to minorities. A class action was filed on August 20, 1995, against MBI. Abraham Mitchell, who acknowledged in his testimony that he was the "decision-maker" for MBI, hired four firms to defend the case: Hand Arendall, Jackson Campbell, Skadden Arps, and Briskman & Binion. This national defense team consisted of two Mobile law firms, a Washington law firm and a New York law firm. It is undisputed that this national defense team was already deeply engaged in settlement negotiations with the plaintiffs and the United States Department of Justice when Aetna was notified of the Lowman suit in late December, 1995. On February 12, 1996, Aetna extended a defense under reservation of rights and retained Peter Sintz to represent the insured. MBI accepted the defense and also accepted Aetna's retention of Peter Sintz as counsel for MBI. However, MBI's retained counsel, Alex Moseley, instructed Sintz that he was not to enter an appearance in the case and was not to reveal his involvement to the opposing parties, so as not to alert the plaintiffs or the Department of Justice that insurance coverage might be available. The Lowman case was settled on March 13, 1996, for $1,750,000. Abraham Mitchell personally paid the settlement.
On December 7, 1995, Jamie Craft brought suit against MBI, Director Abraham Mitchell and Vice-President James Spafford, alleging that MBI had wrongfully terminated her employment because she *193 refused to discriminate against minorities. On December 19, 1995, Aetna extended a defense under reservation of rights to MBI, Mitchell and Spafford in the Craft case. Aetna hired Peter Sintz to represent the insureds. The Craft case was settled on December 2, 1996, for $900,000, again under Mitchell's authority. Mitchell paid $500,000 of the settlement; Aetna and Crum & Forster (another commercial general liability insurer) each contributed $200,000, which was the full settlement authority these carriers had extended prior to settlement.
On May 14, 1996, Aetna's coverage attorney, Charles Sharp, filed a declaratory judgment action in federal court, asking for a judicial determination as to whether Aetna owed coverage for the claims in the Lawman and Craft cases, and taking the position that MBI's settlement in Lowman violated the consent-to-settle clause of the Aetna policy.
On June 6, 1996, Abraham Mitchell, James Spafford[4] and MBI filed a declaratory judgment action in Mobile Circuit Court against Aetna:
1) Count One asked the court to "enter a declaratory judgment finding that, under the policy, Aetna is required to indemnify and unconditionally defend MBI against the claims set forth in the Lowman lawsuit."
2) Count Two asked the Court to "enter a declaratory judgment finding that, under the above policies, Aetna is required to unconditionally defend and indemnify Plaintiffs [MBI and Abraham Mitchell] against the claims set forth in the Craft lawsuit."
3) Count Three alleged that Willis Corroon, as MBI's insurance agent, negligently failed to provide notice of the Lowman action to Aetna.[5]
4) Count Four asserted that Aetna, "acting thorough counsel wrongfully disclosed and unnecessarily publicized confidential communications between MBI and counsel appointed by Aetna to defend MBI." In Count Four, MBI also asserted: "In defending MBI pursuant to a reservation of rights, Aetna is obligated to act under an `enhanced obligation of good faith,' which enhanced obligation of good faith has been violated by Aetna's wrongful disclosure of the above-described information." In addition, MBI sought "compensatory damages in an amount sufficient to compensate MBI for its losses and injuries to be proven at trial; and imposing punitive damages in an amount sufficient to punish Aetna and deter similar wrongful conduct in the future."
After a bench trial, the trial judge held that "Aetna breached its obligation of enhanced duty of good faith to the insured" and awarded compensatory and punitive damages. His order reads, in pertinent part, as follows:
"ORDER

"The Plaintiffs' claims against the Defendant Aetna are based upon a general liability insurance policy issued by Aetna to the Plaintiffs.
". . . .

*194 "... After the Plaintiffs were served with the Lowman suit, Aetna eventually extended a defense to the Plaintiffs with a reservation of rights. As the costs of defending this kind of litigation are staggering, the Plaintiffs made a conscious decision to put the Lowman case on a `fast track' and settle it as early as they could. The Plaintiffs were forced to make a decision because the existence of coverage was disputed, and if the Plaintiffs failed to prevail on that issue they could sustain catastrophic losses.
"As Aetna extended a defense to its insured under a reservation of rights, it had an obligation to observe an enhanced duty of good faith in the conduct of the defense of the underlying cases. L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co., 521 So.2d 1298 (Ala.1987). That case holds that an insurer breaches its enhanced obligation of good faith by placing its interests above those of its insured. The effect of the breach of that obligation is that the insurer will be deemed to have waived any policy defenses and will have an obligation of indemnity to its insured. Aetna breached its obligation of enhanced duty of good faith to the insured in the following ways:
"1. Aetna obtained coverage opinions (adverse to Plaintiffs) from Harry Cole, who at the time was MBI's appointed counsel and, after having actual knowledge of Cole's obvious conflict of interests, Aetna did not advise Plaintiffs of what had occurred and continued to consult with Cole on matters adverse to Plaintiffs;[6]
"2. Consistent with Plaintiffs' duties (to Aetna) under the cooperation clause of the policy, Plaintiffs kept Aetna apprised of the status of the confidential settlement negotiations in the Lowman case, and Aetna purposefully divulged this confidential information to persons then adverse to Plaintiffs (principally Craft and her attorneys) through extraneous inclusion of such negotiations in the filing of a declaratory judgment action in the United States District Court.
". . . .
"It is further ORDERED that the Plaintiff shall have and recover from the Defendant Aetna, the sum of $1,175,000 as damages in the Lowman case and $500,000 in the Craft case.
"It is further ORDERED that under the law and the facts of this case and the bad faith of Aetna, Plaintiffs are entitled to recover from Aetna punitive damages in the sum of $2,000,000.
"This order and award disposes of all claims between the parties."
Aetna filed post-judgment motions for a new trial and for a hearing pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). The trial judge held the Hammond hearing, determined that the damages fit within the guidelines of BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997), and denied Aetna's post-judgment motions. This appeal followed.[7]

I. The Standard of Review
The trial court entered its judgment after hearing disputed oral testimony. Therefore, the ore tenus standard applies to our review of the trial court's *195 findings of fact, which we will not disturb "unless those findings are plainly and palpably wrong and not supported by the evidence." Williams v. Lide, 628 So.2d 531, 534 (Ala.1993), quoted in Eubanks v. Hale, 752 So.2d 1113, 1144 (Ala.1999). "However, the ore tenus rule does not extend to cloak a trial judge's conclusions of law, or incorrect application of law to the facts, with a presumption of correctness." Id. at 1144-45. "[T]he existence of a duty is a question of law to be determined by the trial judge." State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 839 (Ala.1998).

II. The Lowman Suit
Aetna argues that it had no duty to act under an "enhanced obligation of good faith" when it undertook to defend the Lowman suit under reservation of rights. We hold that no enhanced duty arose under the specific facts of that case. Therefore, we reverse and render judgment for Aetna with regard to the Lowman suit.
In L & S Roofing Supply Co. v. St. Paul Fire & Marine Insurance Co., 521 So.2d 1298 (Ala.1987), this Court held that when an insurance company undertakes a defense pursuant to a reservation of rights, it does so under an "enhanced obligation of good faith" toward its insured in conducting such a defense. The duty was recognized in response to a question certified by the United States District Court for the Northern District of Alabama. In its petition for certification, the District Court included a statement of facts, which included the following:
"Although St. Paul has not refused to permit the participation of counsel retained by L & S Roofing, there is no dispute that St. Paul is demanding that the attorneys engaged by St. Paul on behalf of its insured retain control of the underlying litigation."

Id. at 1300. (Emphasis added.) It was in that context that this Court recognized the enhanced obligation and set forth the criteria that the insurer must meet in order to fulfill its duty:
"`This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.'"
L & S Roofing, supra, at 1303, quoting Tank v. State Farm Fire & Cas. Co. 105 Wash.2d 381, 715 P.2d 1133, 1137 (1986). (Emphasis added in L & S Roofing.) Those criteria necessarily assume that the insurer is controlling the investigation, the defense of the lawsuit, and settlement negotiations. This Court went on to hold that "when those criteria have not been met in whole or in part ... the insured is entitled to retain defense counsel of its choice at the expense of the insurer." L & S Roofing, supra, at 1304.
The enhanced obligation of good faith was considered in Shelby Steel Fabricators, Inc. v. United States Fidelity & Guaranty Insurance Co., 569 So.2d 309 (Ala.1990). U.S.F. & G. provided a defense *196 to Shelby Steel under reservation of rights. In discussing the facts, this Court noted:
"From March 1985 until July 1987, U.S.F. & G. had exclusive control over Shelby Steel's defense. Although U.S.F. & G. was kept abreast of the status of the lawsuit, Shelby Steel was never consulted in any way regarding its defense."
Id. at 310. (Emphasis added.)
This Court held that the insurer could not deny coverage pursuant to a reservation of rights where it had not fulfilled its enhanced obligation of good faith:
"[W]e are of the opinion that the insurer... must meet its `enhanced obligation of good faith' in order to deny coverage pursuant to a reservation of rights. This obligation includes ... keeping the insured apprised of the status of his case. Because Shelby Steel was not kept informed as to the status of its case between the initial notice of the reservation of rights ... and U.S.F. & G.'s denial of coverage 29 months later, we conclude that U.S.F. & G. has failed to meet its enhanced obligation to Shelby Steel and, therefore, that it must indemnify Shelby Steel for any liability in the underlying action."
Id. at 312.
The result in Shelby Steel was equitable. U.S.F. & G. was in a position of authority when it extended a defense to Shelby Steel under reservation of rights, gaining "exclusive control over Shelby Steel's defense." Shelby Steel agreed to accept that defense and relied upon U.S.F. & G. to protect Shelby Steel's interests. However, because U.S.F. & G. did not keep Shelby Steel advised as to the status of the lawsuit, U.S.F. & G. was estopped to deny coverage.
MBI and Mitchell accepted defense of the Lowman suit under reservation of rights, but never relinquished control of the lawsuit, including settlement negotiations, to Aetna. Under such circumstances, we hold that Aetna did not have an "enhanced obligation of good faith" to its insureds.
MBI received a draft complaint from Lowman and others in April, 1995. Aetna was not notified of that claim. The Lowman suit was filed against MBI on August 20, 1995. Mitchell did not notify Aetna of the service of the suit; instead, he hired four law firms to defend the company at its own expense.
Mitchell acknowledges that he was the "decision-maker" for MBI. Under his authority, MBI's defense team was committed to a strategy of settlement. It is undisputed that they were deeply engaged in settlement negotiations with the plaintiffs and the United States Department of Justice when Aetna was finally notified of the Lowman suit in late December, 1995.
Aetna agreed to defend the Lowman suit under reservation of rights. MBI accepted the defense and also accepted Aetna's retention of Peter Sintz as counsel for MBI. However, MBI and its privately retained counsel refused to allow Aetna to assume a position of authority or to become actively involved in the defense of the Lowman suit. MBI's counsel instructed Sintz that he was not to enter an appearance in the case and was not to reveal his involvement to the opposing parties. By those instructions, Sintz was prevented from pursuing any discovery, and Aetna was prevented from pursuing any independent investigation concerning liability or damages.
Mitchell continued to pursue his settlement strategy through MBI's privately retained defense team. Neither Aetna nor Sintz was allowed to participate in the negotiations which led to a settlement only *197 one month after Aetna had agreed to defend under reservation of rights. While the negotiations were underway, MBI did not respond to Aetna's request for information.
MBI controlled all aspects of the Lowman suitinvestigation, litigation and negotiation. Aetna and the competent defense counsel which it retained for MBI were not allowed to participate in any way. Therefore, Aetna had no duty to act under an "enhanced obligation of good faith." The trial court erred in reaching a contrary conclusion of law.

III. The Craft Suit
Aetna argues that it had no duty to act under an "enhanced obligation of good faith" when it undertook to defend the Craft suit under reservation of rights. However, our review of the record indicates that Aetna maintained control of the defense sufficient to cause the enhanced duty to arise. Aetna also argues that the trial court erred in concluding that it breached any enhanced duties. We hold that the trial court incorrectly applied the law to the facts of the Craft defense and, therefore, we reverse and render judgment for Aetna with regard to the Craft suit.
The Craft suit was filed on December 7, 1995. On December 19, 1995, Aetna extended a defense to MBI and Mitchell under reservation of rights. Aetna hired Peter Sintz to represent its insureds. Crum and Forster, another liability insurer, hired separate defense counsel, Carroll Sullivan. Sintz and Sullivan worked together in defending the Craft suit.
The Craft suit was settled on December 2, 1996, for $900,000, again under Mitchell's authority. Mitchell paid $500,000, and each insurer contributed $200,000, their full settlement authorities.
The trial court did not find that Aetna provided an inadequate defense of the Craft suit. It is undisputed that Aetna hired competent defense counsel who understood that only the insureds were his clients. The trial court found that Aetna breached its "enhanced obligation of good faith" in only two ways, neither of which directly involved the defense of the Craft suit under reservation of rights.

A. Coverage Opinions
The trial court found that Aetna breached its duty in the following way:
"1. Aetna obtained coverage opinions (adverse to Plaintiffs) from Harry Cole, who at the time was MBI's appointed counsel and, after having actual knowledge of Cole's obvious conflict of interests, Aetna did not advise Plaintiffs of what had occurred and continued to consult with Cole on matters adverse to Plaintiffs."
However, the undisputed facts compel us to conclude that the trial court's legal conclusion was erroneous.
Aetna extended its defense under reservation of rights on December 19, 1995. It requested a coverage opinion from Cole, and received an opinion letter from Cole on January 12, 1996. Cole had concluded that there was no coverage for the allegations of the complaint and, therefore, Aetna withdrew its defense on January 24, 1996.
On February 5, 1996, MBI's privately retained counsel wrote Aetna, asking that it reconsider its denial of coverage. On February 6, Aetna sent the letter from MBI's counsel to Cole, asking for Cole's further advice. In a February 9 letter, Cole advise Aetna that its denial of coverage was justified. At this point, Aetna ignored the advice of its coverage attorney, and again extended a defense under reservation of rights.
*198 We conclude that Aetna's dealings with Cole, insofar as they dealt with the defense of the Craft suit, in no way demonstrated "a greater concern for the insurer's monetary interest than for the insured's financial risk." Instead, Aetna resolved its doubts in favor of the duty to defend, and instructed competent defense counsel to resume his efforts on behalf of its insureds. The trial court erred in concluding that Aetna breached its enhanced duty.

B. Declaratory Judgment
The trial court concluded that Aetna breached its duty in another way:
"2. Consistent with Plaintiffs' duties (to Aetna) under the cooperation clause of the policy, Plaintiffs kept Aetna apprised of the status of the confidential settlement negotiations in the Lowman case, and Aetna purposefully divulged this confidential information to persons then adverse to Plaintiffs (principally Craft and her attorneys) through extraneous inclusion of such negotiations in the filing of a declaratory judgment action in the United States District Court."
Again, the undisputed facts compel us to conclude that the trial court's legal conclusion was erroneous.
This Court has long recognized the usefulness of declaratory judgments in insurance-policy disputes. See, e.g., Morton v. Allstate Ins. Co., 486 So.2d 1263 (Ala. 1986); Federated Guaranty Life Ins. Co. v. Bragg, 393 So.2d 1386 (Ala.1981). "It is well settled that a declaratory judgment action may be brought by a liability insurer to have a court declare whether or not it is liable to defend a suit." Thompson v. Hartford Acc. & Indem. Co., 460 So.2d 1264, 1266 (Ala.1984). This Court has also recognized that parties should be able to litigate freely, without having to worry about being sued for what is said during the course of litigation. Therefore, in defamation actions, relevant communications made during judicial proceedings are absolutely privileged. See Walker v. Majors, 496 So.2d 726, 730 (Ala.1986), and the cases cited therein. The issue of the relevancy of a communication is a matter for the court to determine, "and the adjudicated cases have established a liberal view in the interpretation of the language used, and all doubts are resolved in favor of its relevancy or pertinence." Id. at 730.
Aetna filed a declaratory judgment action on May 14, 1996, in an attempt to resolve the coverage questions presented by the Lowman and Craft suits. Aetna acted within its legal rights in filing that action. The consent-to-settle issues with regard to the Lowman case (where Aetna had no enhanced duty) were among the issues addressed in the petition. Therefore, as a matter of law, settlement negotiations undertaken and settlement commitments made under Mitchell's authority and control were relevant to that proceeding. Mitchell and MBI cite no authority to support the trial court's conclusion that such information was "extraneous," and our research has revealed no such authority.[8]

IV. Conclusion
Aetna has raised many other issues, the resolution of which is not necessary to our decision. For the reasons stated above, the judgment of the trial court is reversed and judgment is rendered for Aetna.
*199 REVERSED AND JUDGMENT RENDERED.
HOUSTON, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.
LYONS and JOHNSTONE, JJ., concur in the result in part and dissent in part.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur in that part of Justice Woodall's opinion that would reverse the award of punitive damages and render a judgment for Aetna on the claim for punitive damages. However, I would reverse the award of compensatory damages and remand the case to afford the trial court the opportunity to specify the nature of those damages.
LYONS, Justice (concurring in the result in part and dissenting in part).
MBI was sued in two lawsuits charging discrimination. The Lowman case arose from alleged discrimination in housing, while the Craft case stemmed from alleged discrimination in employment. Many of the facts in Lowman constituted relevant background in Craft. Aetna did not learn of the pendency of Lowman until the case had reached the point where settlement discussions were ongoing between plaintiffs' counsel, the United States Department of Justice, and MBI's privately retained counsel. Aetna agreed to defend Lowman and Craft under separate reservations of rights.
Aetna's internal rules called for the erection of a "Chinese Wall" between personnel involved in a coverage dispute with its insured and personnel simultaneously involved in the defense of a claim against its insured. Under the evidence presented in the trial court, the trier of fact could reasonably have concluded that Aetna failed to follow its own policy manuals, allowing personnel to move between coverage and defense; that these breaches of the Chinese Wall were withheld from the insured; and that information concerning a proposed settlement of the Lowman case was disclosed by Aetna in pleadings it filed in a federal court seeking a declaratory judgment concerning its liability to MBI in both the Craft case and the Lowman case.
MBI filed a declaratory-judgment action and, as it related to Aetna, it set forth two counts dealing with Lowman and Craft, respectively, seeking a declaration that Aetna, under its policies, was required to indemnify and unconditionally defend MBI. A separate count alleged that Aetna had failed to act under an enhanced obligation of good faith while defending MBI pursuant to a reservation of rights. The trial court found, after a bench trial, that Aetna had breached its obligation of an enhanced duty of good faith in the following waysfailing to disclose that it had obtained a coverage opinion adverse to MBI relating to the Craft case from an attorney that Aetna had employed to defend MBI in a third lawsuit charging sexual harassment, a lawsuit that was pending when Aetna engaged the attorney for the coverage opinion; and purposefully divulging confidential settlement information relevant to the Lowman case to Craft and her attorneys by attaching that information to Aetna's pleadings in its declaratory-judgment action in the United States District Court. These findings of the trial court are relevant only to count four of MBI's complaint, and they serve as the basis for an award of compensatory damages in the amount of $1,175,000 applicable to Lowman and $500,000 applicable to Craft, and an additional $2,000,000 as punitive damages. The compensatory awards *200 reflect the amounts paid by MBI in settlement of Lowman and Craft, respectively.
An insurer cannot rely on a reservation of rights in order to protect itself from waiver by proceeding with a defense of a claim against its insured if it fails to exercise an enhanced obligation of good faith while acting under a reservation of rights. Shelby Steel Fabricators, Inc. v. United States Fid. & Guar. Co., 569 So.2d 309 (Ala.1990). However, in the Shelby Steel case, the issue before this Court was whether the insurer could rely upon an exclusion of certain activity that was otherwise within the scope of the coverage. Alabama law has historically refused to recognize estoppel as the basis for "chang[ing] the terms of the policy so as to cover additional matter," confining its operation to instances where "the subject matter is within the terms of the policy." Johnson v. Allstate Ins. Co., 505 So.2d 362, 365 (Ala.1987). Aetna contends that a breach of the enhanced obligation of good faith when acting pursuant to a reservation of rights cannot justify a determination of coverage where the policy does not afford coverage. Aetna further contends that no coverage existed under the policies and correctly observes that the trial court did not find coverage based upon the terms of the policies. The trial court's conclusions as to Aetna's duty to indemnify, as exemplified by awards of compensatory damages that match the amounts paid in settlement in each of the two cases, are grounded upon the finding that Aetna failed to exercise an enhanced obligation of good faith while acting under its reservation of rights.
This Court first recognized the doctrine of an enhanced obligation of good faith while defending under a reservation of rights in L & S Roofing Supply Co. v. St. Paul Fire & Marine Insurance Co., 521 So.2d 1298 (Ala.1987). The seminal case upon which this Court relied in L & S Roofing comes from the State of Washington. See Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 715 P.2d 1133 (1986). A similar argument was presented in a later Washington case where the insurer contended that the doctrine of estoppel could not create coverage where none existed under the policy. The Washington court rejected it by holding that such rule was limited to contract actions and then described its rule announced in Tank as creating a remedy in tort. See Safeco Ins. Co. of America v. Butler, 118 Wash.2d 383, 823 P.2d 499 (1992).
It is not necessary to reach the question whether this Court should adopt the rule announced in Butler. In the trial court, Aetna described Shelby Steel as holding that the insurer loses any right to assert any policy defense to coverage and requires the carrier to reimburse its insured for the liability that the insured incurred to a third party if it accepts the defense of its insured but fails to conduct that defense in such a way as to comport with the best interest of the insured. Summing it up, Aetna argued in the trial court as follows: "In other words, what the Shelby Steel opinion required of U.S.F. & G. was that U.S.F. & G. assumed a duty to indemnify the insured regardless of whether its policy imposed an obligation to do so." (Emphasis added.) A party cannot obtain reversal on appeal by an argument inconsistent with that advanced in the trial court. City of Dothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964). We therefore should decide this case based upon the premise that the doctrine of equitable estoppel can create a duty to indemnify regardless of the terms of coverage afforded by the policies.
What remains for us to determine is whether the conduct of Aetna and MBI gave rise to circumstances that warrant an *201 estoppel precluding Aetna from asserting defenses to coverage.
The doctrine of estoppel has three essential elementsa position of authority assumed by the defendant under color of right; submission to and reliance upon that assumption by the plaintiff; and injury suffered by the plaintiff as a proximate consequence of such submission and reliance. Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co., 211 Ala. 84, 99 So. 787 (1924).

Lowman
Aetna contends that the doctrine of the duty to exercise an enhanced obligation of good faith while defending under a reservation of rights should not apply because MBI did not surrender complete control of the defense to it. Aetna argues that when an insured is offered a defense under a reservation of rights it has two choices either reject the defense and assume complete control of third-party claims against it, or accept the defense and surrender control to the insurer. The tender of a reservation-of-rights defense by an insurer is essentially a straddle whereby the insurer minimizes its downside while protecting its rights. Based on evidence presented in the trial court, the fact-finder could reasonably have concluded that Aetna offered a reservation of rights; MBI responded to Aetna's tender of a defense pursuant to a reservation of rights with a counter-proposal that involved another form of a straddle, with MBI demanding that it remain in control of ongoing settlement negotiations while requesting that the defense attorney tendered by Aetna to defend the action remain in the background during settlement negotiations; that MBI did not insist that the Aetna defense attorney take no action or otherwise prevent the defense attorney from conducting an investigation and otherwise taking steps expected of defense counsel, such as evaluating the case against MBI; and that Aetna acquiesced in this arrangement. Consequently, I would reject Aetna's efforts to confine the enhanced obligation of good faith to arrangements where the insurer assumes complete control of the defense. The simple fact that the insurer does not dominate the defense should not serve as the basis to spare the insurer from the duty to refrain from acting in such a fashion as to prefer its interests over those of its insured.
However, even imposing the burden of acting in enhanced good faith upon Aetna, I am unable to find sufficient detriment to MBI in the context of the Lowman case, particularly in view of MBI's domination of the defense of the action and Aetna's refusal to follow the advice of the MBI defense counsel that it consulted on the coverage question. I recognize that the State of Washington, in the context of its embrace of the doctrine of enhanced duty of good faith as a tort remedy in Butler, holds that a violation of the duty gives rise to a rebuttable presumption of prejudice. Nevertheless, even if we were to follow Butler on the detriment issue, I am hard pressed to find ample evidence in this record to justify a conclusion that, as to the Lowman case, the presumption was not rebutted.

Craft
Aetna argues that liability cannot be based upon its conduct with reference to Craft because, it says, the settlement information from Lowman was not confidential; the attachment of the documents concerning the settlement to pleadings gives rise to a privilege that immunizes it from civil liability; and, in all events, the disclosure made no difference, as the testimony of the plaintiff in Craft conclusively establishes. Based on evidence presented in the trial court, the fact-finder could reasonably have concluded that Aetna's access to information *202 concerning the settlement in Lowman was subject to an understanding that untimely and unauthorized disclosure could cause harm; that Ms. Craft's testimony concerning her intentions was sufficiently impeached both by a showing of her bias and through the testimony of her former attorney; and that had MBI enjoyed the benefit of a defense that adequately evaluated its exposure, it could have moved earlier to settle Craft for less money than was actually required after the disclosure of the Lowman settlement in the pleadings in Aetna's declaratory-judgment action. Aetna's immunity argument fails because it assumes that there is no alternative to complete disclosure of otherwise confidential information when documents become relevant to litigation. Nothing prevented Aetna from submitting confidential documents either redacted or under seal so as to protect the interest of its insured. See, e.g., Siedle v. Putnam Invs., Inc., 147 F.3d 7 (1st Cir.1998), a case involving information protected by the attorney-client privilege that a party disclosed in the course of filing a lawsuit. The United States Court of Appeals for the First Circuit held that sealing the privileged information would both protect the party claiming the attorney-client privilege and allow the other party to provide to the trial court the information necessary to adequately support the complaint. Here, Aetna failed to take adequate precautionary steps, to the detriment of its insured. I would therefore affirm the award of $500,000 in compensatory damages related to Craft.

Punitive Damages
While Aetna's discussions of the applicable law in the trial court foreclose our revisiting the scope of estoppel by reason of the breach of the enhanced duty of good faith when offered as a defense in a contract action, in no way did Aetna recognize that any remedy available to MBI would include the right to seek punitive damages. I would limit the concept of estoppel by reason of the breach of the enhanced obligation of good faith to a determination of whether an insurer can assert defenses to coverage in a contract action on the policy.
This Court has historically been quite cautious about permitting recovery of punitive damages in settings arising from breach of contract. We have recognized promissory fraud as a basis upon which to award punitive damages when it can be shown that the defendant, at the time he made his contract, intended not to perform it. Phillips Colleges of Alabama, Inc. v. Lester, 622 So.2d 308 (Ala.1993); General Motors Acceptance Corp. v. Covington, 586 So.2d 178 (Ala.1991). No such circumstance is here presented. Although this Court created a remedy of bad-faith liability of an insurance company for failure to pay claims submitted to it by its insured, in that instance we have required that the. insured show that the insurer breached the contract of insurance. See State Farm Fire & Casualty Co. v. Slade, 747 So.2d 293, 317-18 (Ala.1999), where this Court declined to recognize a fraud remedy for failure to investigate a claim regardless of whether coverage was established. We recently held that an action alleging the wrongful cancellation of an insurance policy is an action in contract, not in tort. Ex parte Certain Underwriters at Lloyd's of London v. Defleron, 815 So.2d 558 (Ala. 2001). Therefore, punitive damages would not be available in such an action. In the context of third-party insurance, we have recognized liability of the insurer for bad-faith failure to settle and for bad-faith refusal to defend under circumstances where the obligation to afford a defense has been established. See, e.g., Blackburn v. Fidelity & Deposit Co. of Maryland, 667 So.2d 661 (Ala.1995); State Farm Mut. Auto. Ins. Co. v. Hollis, 554 So.2d 387 *203 (Ala.1989). In these instances, the liability of the insurance company under its contract has been established. If we are to recognize the availability of punitive damages in this setting, where there has been no showing that the policies actually covered the claims and the trial court did not make any such finding as to the scope of coverage under the policies, we would be announcing a rule that breaks dramatically with our past jurisprudence. That the Washington court in Butler saw fit to treat its remedy as sounding in tort is of interest, but we must be guided by the weight of our precedent running counter to this view. I am therefore unwilling to expand upon the rule announced in L & S Roofing and Shelby Steel by acknowledging the existence of a new tort remedy giving rise to punitive damages arising from the administration of a contract of insurance. The award of punitive damages should be reversed and a judgment rendered for Aetna on the claim for punitive damages.
JOHNSTONE, J., concurs.

On Application for Rehearing
WOODALL, Justice.
APPLICATION OVERRULED.
MOORE, C.J., and HOUSTON, BROWN, HARWOOD, and STUART, JJ., concur.
LYONS and JOHNSTONE, JJ., dissent.
SEE, J., recuses himself.
LYONS, Justice (dissenting).
I respectfully dissent. I would grant the application for rehearing and affirm the $500,000 judgment related to the Craft suit.[1] The majority opinion issued on May 18, 2001, leaves an insured in the position of being required by the terms of a cooperation clause to disclose sensitive information concerning settlement negotiations in an underlying action, which the insurer can then disclose with impunity in a pleading in a declaratory-judgment action.
JOHNSTONE, J., concurs.
NOTES
[1] Aetna Casualty & Surety Company, Aetna Casualty & Surety Company of Illinois, and Aetna Casualty & Surety of America ("Aetna").
[2] Jane L. Lowman, et al. v. Mitchell Brothers, Inc., d/b/a MBI, CV-95-0694-RV-1, in the United States District Court for the Southern District of Alabama.
[3] Jamie Craft v. Abraham Mitchell, James Spafford and Mitchell Brothers, Inc. d/b/a MBI, CV-95-969-AH-M, in the United States District Court for the Southern District of Alabama.
[4] The trial court awarded no damages to James Spafford. Spafford did not appeal.
[5] The trial court found for Corroon, stating: "With respect to the Plaintiffs' claims against the Defendant Willis-Corroon, the Plaintiffs have expressly waived any attorneys fees incurred by them and have no other damages which they may recover against that Defendant. Therefore, it is not necessary for the Court to consider the negligence claims against Willis-Corroon." MBI did not appeal from this ruling.
[6] Cole's firm was retained by Aetna to defend MBI in a case alleging sexual harassment. MBI did not learn of Cole's conflict of interest until after the action sub judice was filed.
[7] Only Aetna appealed from the trial court's final order. The absence of a cross-appeal by MBI and Mitchell makes final the trial court's failure to find coverage under Aetna's policy. Thus, no coverage claim has been preserved.
[8] Although not necessary to support our holding, we note that Ms. Craft testified without contradiction that her knowledge of the declaratory-judgment action did not affect her settlement position. Also, we note that a public settlement hearing was held in the Lowman suit on June 1, 1996, only three weeks after Craft received a copy of the declaratory judgment petition. The case was not settled until December 2, 1996.
[1] Jamie Craft v. Abraham Mitchell, James Spafford and Mitchell Brothers, Inc., d/b/a MBI, CV-95-969-AH-M, in the United States District Court for the Southern District of Alabama.