[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15541
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 1, 2011
JOHN LEY
CLERK

D. C. Docket No. 06-00667-CV-SLB

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

Plaintiff-Appellant-
Counter-Defendant-
Cross-Appellee,

versus

SOUTHEASTERN ENVIRONMENTAL INFRASTRUCTURE, LLC,

Defendant-Appellee-
Counter-Claimant-
Cross-Appellant,

LARRY RIVERS,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(March 1, 2011)

Before TJOFLAT, ANDERSON and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

In this declaratory judgment action regarding insurance coverage, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), Southeastern Environmental Infrastructure ("SEI"), and Larry Rivers all appeal portions of several of the district court's orders. We address the arguments in turn and affirm.

## I. DISCUSSION

### A. Bad Faith

In the district court, SEI raised several claims alleging bad faith on the part of Penn National. On cross-appeal, SEI narrowed its argument to a bad faith claim based on the enhanced obligation of good faith as set forth in L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co., 521 So. 2d 1298 (Ala. 1987). That enhanced duty requires the insurance company to properly investigate the claim, retain competent counsel, keep the insured informed of the case's progress, and not act in any way that would be to the detriment of the insured. Id. at 1303. SEI's

---

[*]    Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation

argument that Penn National's investigation was insufficient is conclusory, and thus without merit. SEI appears to argue on appeal that Penn National should have settled with Rivers. However, under Alabama law, it is the insured's obligation to fund a settlement when an insurance company is defending under a reservation of rights, as was the case here. Id. at 1303; see also Mitchum v. Hudgens, 533 So. 2d 194, 201-02 (Ala. 1988) (contrasting differences in settlement negotiations when insurer defends under a reservation of rights and when insured has relinquished control of defense). SEI had a representative at the mediation and SEI's own separate counsel was involved in all of the relevant negotiations. SEI could have settled but Penn National was not obligated to provide the funds. Therefore, Penn National's failure to settle with its own funds did not amount to bad faith.

### B. Post-Judgment Interest

With respect to the post-judgment interest awarded by the district court, both Penn National (on direct appeal) and Rivers (on cross-appeal) assert challenges. The particular arguments asserted in brief by each party have been carefully considered, but found unpersuasive. Any other arguments are deemed abandoned. We cannot conclude that either party has pointed to error in the district court's judgment in this regard.

C. The Underlying Insurance

Rivers argues on cross-appeal that the district court erred when it held that Penn National was liable only for the amount of the judgment in excess of the million dollar underlying insurance limit.  Rivers argues that because the umbrella policy, when belatedly delivered, did not include a schedule of underlying insurance, Penn National could not enforce the underlying insurance limit.  We readily reject Rivers' argument.  When the umbrella policy was delivered, it was obvious to everyone that it was excess insurance over and above the limits of liability in the CGL policy.

Rivers also argues that the district court erred in applying the "underlying insurance limit," asserting that the correct underlying insurance limit should have been the $10,000 retained limit.  We readily reject Rivers' argument in this regard.  The policy language is clear.  The policy expressly provides "The limits of insurance in any policy of underlying insurance will apply even if . . . (a) the 'underlying insurer' claims the insured failed to comply with any condition of the policy."  The policy language also provides "If the policies of 'underlying insurance' do not apply to the occurrence' or 'offense', the amount stated in the Declarations as the 'retained limit'" is the "applicable underlying limit."  Under the first quoted policy language, it is clear that the limits of underlying insurance apply

notwithstanding the fact that there was no coverage under the CGL policy because of the lack of notice. Similarly, the second quote from the policy language means only that the retained limit applies when the underlying insurance does not apply at all to the occurrence. The underlying insurance here (the CGL policy) clearly applied to the occurrence, but simply provided no coverage because of the lack of notice.

We also reject Rivers "drop down argument." This argument is precluded by the express language of the policy, to-wit: "The limits of insurance in any policy of underlying insurance will apply even if . . . (a) the 'underlying insurer' claims the insured failed to comply with any condition of the policy."

Other arguments challenging the district court's application of the underlying insurance limit are wholly without merit. They are rejected without need for discussion.

### D. Independent Contractor

We reject as wholly without merit Penn's argument on direct appeal that the district court erred in concluding that Rivers was an independent contractor.

### E. Notice

Penn National argues that SEI's late notification of the accident voided coverage under the umbrella policy. We reject Penn National's attempt to hold SEI to conditions of a policy that it had not received at the time of the accident.

SEI and Rivers on cross-appeal challenge the district court's holding that the underlying CGL policy provided no coverage because of the belated notice. They argue that the district court erred when it held that Penn National did not waive the policy condition of giving prompt notice by not including it in the first two reservation of rights letters. We disagree. The district court properly interpreted Penn National's reservation of rights letters to preserve the notice issue. See Shelby Steel Fabricators v. U.S. F. & G., 569 So. 2d 309 (Ala. 1990) (interpreting similarly broad language in reservation of rights letter to not waive later discovered issues). SEI and Rivers also argue that the district court erred when it held that SEI's notice to Penn National under the CGL was late. Alabama courts look at both the length of the delay and the reason for the delay. Southern Guar. Ins. Co. v. Thomas, 334 So. 2d 879 (Ala. 1976). SEI's reason for the delay – that it did not think it would be sued – has been specifically rejected. Id. at 884. The same court in Thomas held that a six month delay in notifying the insurance company of the accident was unreasonable. Id. Therefore, the district court did not err.

F.  Discovery

On cross-appeal, SEI argues that the district court erred when it denied SEI's request for discovery before the court decided on Penn National's motion for summary judgment.  The district court denied SEI's request because it thought that the sought-after manuals had no bearing on its decision.  Because SEI's one-page argument that the court abused its discretion does not explain how the district court erred when it made that determination, we reject it.

## II.  CONCLUSION

We have carefully considered, and have heard oral argument with respect to, the numerous issues raised by the several parties on direct appeal and cross-appeal. We conclude that none of the challenges to the district court's rulings have merit. Accordingly, the judgment of the district court is

AFFIRMED